IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
Austin Division

**Kristen Michael**, an individual on behalf of
herself and all persons similarly situated,

        Plaintiff,

    v.

**Opportunity Financial, LLC**, a limited
liability company,

        Defendant.

Case No. _1:22cv529_____

**Class Action Complaint**

**Demand for Jury Trial**

# TABLE OF CONTENTS

I.   Introduction ...................................................................................................................3

II.  Parties .........................................................................................................................5

III. Jurisdiction and Venue ...............................................................................................5

IV.  Facts.............................................................................................................................6

      A.   Texas law caps the interest rate on unlicensed lenders like Opportunity Financial
           at no more than 30% per year, and loans with a higher interest rate are void.........6

      B.   Opportunity Financial devised a rent-a-bank scheme in an unsuccessful attempt to
           evade Texas law. ...............................................................................................7

           1.   Opportunity Financial is the true lender because it holds the predominant
                economic interest and bears the risk of loss ..................................................7

           2.   Opportunity Financial is the true lender because it handles all acquisition,
                all marketing, all underwriting, and all servicing. .......................................9

           3.   Opportunity Financial is the true lender because it bears all responsibilities
                under the loan contracts...........................................................................11

      C.   Opportunity Financial's loan contracts are forms prepared by Opportunity
           Financial and forced on the borrowers. ..............................................................13

      D.   The loans' arbitration clauses are void and unenforceable...................................13

      E.   Ms. Michael's loans are over 130% APR, with a duration of 19 months. ............15

V.   Class Action................................................................................................................16

VI.  Causes of Action.........................................................................................................18

VII. Prayer for Relief .........................................................................................................24

## I.    INTRODUCTION

1.    160% APR. That's the interest rate on Defendant Opportunity Financial's loans to millions of borrowers in Texas and in over 30 other states.

2.    The interest rate is high everywhere. And in Texas, it's also illegal. Here the max rate caps out at 30%.

3.    Yet Opportunity Financial continues loaning money at 160% APR, both in states where it's legal and in states where it's not.

4.    Opportunity Financial's conduct in both sets of states is identical. It markets the same loan product, at the same 160% interest rate, under the same trademarked "OppLoans" name. It underwrites the loans. It originates the loans. It services the loans. It enforces the loans. It even claims the loans on its financial reports.

5.    The one difference? In states where 160% APR is legal, Opportunity Financial names itself as the lender in the loan contracts.

6.    But in states where it's illegal, Opportunity Financial names two entities in those contracts: Opportunity Financial as the loan servicer and Utah state-chartered or FinWise Bank (or another Utah bank) as the purported lender. Then, after the loans are signed, Opportunity Financial buys 95% of the loan from the bank and goes about business as usual.

7.    This is a sham. Opportunity Financial is the true lender on these loans. It bears all risk of loss, and it holds the predominant economic interest. Not FinWise. And not any other Utah bank.

8.    Opportunity Financial can't use this rent-a-bank scheme to immunize itself from Texas law. Courts have repeatedly held that rent-a-bank schemes and similar rent-a-tribe schemes are illegal and can't circumvent state law. *E.g.*, *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, No. 15-cv-7522, 2016 WL 4820635, at *6 (C.D. Cal. Aug. 31, 2016); *see, e.g.*, *D.C. v. Elevate Credit, Inc.*, No. 20-cv-1809, 2021 WL 2982143, at *6–9 (D.D.C. July 15, 2021). These schemes have even landed folks in federal prison on racketeering charges. *E.g.*,

U.S. Department of Justice, Scott Tucker Sentenced To More Than 16 Years In Prison For Running $3.5 Billion Unlawful Internet Payday Lending Enterprise, https://www.justice.gov/usao-sdny/pr/scott-tucker-sentenced-more-16-years-prison-running-35-billion-unlawful-internet-payday (Jan. 5, 2018).

9. For these reasons, Texas law applies to these loans and invalidates them.

10. This conclusion is not controversial. Opportunity Financial has virtually conceded as much in a case over its loans in DC. There, the DC Attorney General sued Opportunity Financial over the same rent-a-bank scheme. That lawsuit ended with Opportunity Financial agreeing to:

- pay $1.75 million;

- forgive $640,000 in past due interest; and

- not offer, provide, advertise, or service any loans over the maximum DC interest rate of 24% APR.

11. Opportunity Financial's own SEC filings concede that it may be the true lender on these loans and that the loans may therefore be invalid. As it tells the SEC and prospective investors:

> If loans facilitated through our platform for one or more bank partners were subject to successful challenge that *the bank partner was not the 'true lender,' such loans may be unenforceable* or otherwise impaired, we or other program participants may be subject to, among other things, fines, judgments and penalties ….

(emphasis partly omitted).

12. This action seeks to hold Opportunity Financial accountable for its racketeering and illegal loans in Texas. It seeks damages and restitution. It also seeks a judicial determination that Opportunity Financial is the true lender on the loans, that Texas law applies to these loans, and that the loan contracts and arbitration clauses are void and unenforceable.

## II.    PARTIES

13.    Plaintiff Kristen Michael is a natural person domiciled in Texas. This is true as of both today's date and the dates when Ms. Michael entered her loan contracts with Opportunity Financial.

14.    Defendant Opportunity Financial, LLC is a limited liability company. Its principal place of business is in Chicago, Illinois.

15.    Opportunity Financial's members are: DAV 513 Revocable Trust, JSK Management Holdings, LLC, LTHS Capital Group LP, MCS 2017 Trust FBO Tracy Ward, MCS 2017 Trust FBO Todd Schwartz, Ward Capital Group LP, OppFi Management Holdings, LLC, ACM OppLoans Warrants VII LLC, Bruce Hammersley, Ray Chay, Jessica LaForte, Inoh Choe, Jeremiah Kaye, and CJ Newton.

16.    Opportunity Financial's natural person members are all domiciled in Illinois.

17.    Opportunity Financial's trust members comprise persons who are all domiciled in Illinois.

18.    Opportunity Financial's limited liability company members comprise natural-person members who are all domiciled in either Illinois or Texas.

19.    Opportunity Financial's limited partnership member comprises natural-person partners who are all domiciled in Illinois.

## III.    JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction over this action for two reasons. First, it has federal question jurisdiction over the RICO claims and supplemental jurisdiction over the state law claims.

21.    Second, the amount in controversy—the aggregate amount sought by the Class— exceeds $5 million, and at least one Plaintiff is diverse from at least one Defendant. Therefore, the Court has subject matter jurisdiction under the Class Action Fairness Act.

22.     This Court has specific personal jurisdiction over Opportunity Financial because it has intentionally availed itself of and purposefully directed its activities towards the State of Texas by doing business here.

23.     Opportunity Financial solicited and entered loans with Ms. Michael and the Class, all of whom were Texas residents and citizens at the time of entering the loans. Opportunity Financial knew this. Ms. Michael and the Class' loan applications listed Texas addresses for their residence.

24.     Opportunity Financial spearheaded the rent-a-bank scheme and implemented that scheme in Texas. It knew the scheme would affect Texas.

25.     Venue is proper in the Austin Division of the Western District of Texas because a substantial part of the events giving rise to the claim occurred here. When Opportunity Financial entered the loan with Ms. Michael, she lived in Travis County.

## IV.     FACTS

### A.     Texas law caps the interest rate on unlicensed lenders like Opportunity Financial at no more than 30% per year, and loans with a higher interest rate are void.

26.     Texas law caps the interest rate on consumer loans at 10% per year. Tex. Fin. Code § 302.001(b).

27.     To issue loans at a higher interest rate, an entity must obtain a Texas lending license. *Id.* § 342.051(a). An entity "may not use any device, subterfuge, or pretense to evade" this requirement. *Id.* § 342.051(b).

28.     With such a license, the maximum interest rate on a loan not secured by real property is no greater than 30% per year. *Id.* § 342.201(e).

29.     Opportunity Financial has that Texas lending license. Therefore, the maximum interest it may charge on a loan is no more than 30% per year.

30.     Any entity who contracts for, charges, or receives more than the maximum interest rate is liable for (1) twice the amount of the interest contracted for, charged, or received,

and (2) legal fees. *Id.* § 349.001(a); *see also id.* §§ 305.001(a), 305.005. Additionally, it is liable for three times the economic loss. *Id.* § 349.003(a). Texas law allows grants additional recoverable penalties in class actions, including penalties of $100,000 per violation, as well as legal fees and costs. *Id.* § 349.403.

31.     If the entity also contracted for, charged, or received interest more than double the legal rate, it is liable for (1) all principal, (2) all interest, and (3) legal fees. *Id.* § 349.002; *see also id.* § 305.002(a). This conduct is also a crime under Texas law. *Id.* § 349.501.

**B.     Opportunity Financial devised a rent-a-bank scheme in an unsuccessful attempt to evade Texas law.**

32.     In 2012, Opportunity Financial started its business as a storefront lender. The next year it moved its business online and focused on nonprime consumers.

33.     Opportunity Financial now issues loans in around 35 states.

34.     In four states, Opportunity Financial closes subprime loans (its OppLoans product) in its own name and does not engage in a rent-a-bank scheme. Those states do not have usury laws prohibiting those loans, so Opportunity Financial's conduct in those states is lawful.

35.     Opportunity Financial's loans to Texas are normally around 160% per year, but sometimes they are around 130% per year. The total principal ranges from $500 to $4,000. Typically the repayment term is around 11 months, but it can range from 9 to 18 months.

36.     Opportunity Financial's loans to Texans are personal loans. They are not for business purposes.

37.     Opportunity Financial has also expanded into the near-prime market and may have at least some lawful operations in that segment.

**1.     Opportunity Financial is the true lender because it holds the predominant economic interest and bears the risk of loss**

38.     To create a veneer of legitimacy, Opportunity Financial has implemented a rent-a-bank scheme. It crafts the loan contract as purportedly between one of three Utah state-chartered banks (generally FinWise Bank, but sometimes other banks such as First Electronic)

and the Texas consumer. These banks are wholly located in the State of Utah and have no branches outside that state.

39.    But what Opportunity Financial puts on paper does not change the reality: it is the true lender on these loans. Opportunity Financial holds the predominant economic interest. It bears the risk of loss and poor performance. And it funds the expenses for the provision of the loans.

40.    Shortly after every loan is entered, Opportunity Financial buys 95% of each loan from the rented Utah-chartered bank, such as FinWise. It makes these purchases daily.

41.    Opportunity Financial takes the risk of poorly performing loans. Its accounting statements include provisions for losses on the loans, costs related to its funding of the purchases of the loans, and the costs of loan origination.

42.    By comparison, FinWise and the other rented banks' risk and reward on these loans is virtually nil. Their fees and expenses are capped under its agreements with Opportunity Financial. And Opportunity Financial's assumption of the risk and purchase of the loans is guaranteed through their agreements with the rented bank (such as FinWise), including a requirement that Opportunity Financial hold cash in blocked accounts at each rented bank.

43.    Opportunity Financial provides the rented banks (such as FinWise) with three more layers of security to guarantee Opportunity Financial's purchase of the loans: a cash collateral account, an alternate collateral account (both with defined minimum balances), and letters of credit for the benefit of each bank.

44.    Driving home the point that Opportunity Financial is the true lender on these loans is its own financial statements. These statements identify Opportunity Financial's "Key Performance Metrics." The lead metric is "Total Net Originations." That number "includes both originations by bank partners on the OppFi platform, as well as direct originations by OppFi." Other key metrics are the charge-off percentages, auto-approval rates, and marketing costs—all things handled by Opportunity Financial.

**2. Opportunity Financial is the true lender because it handles all acquisition, all marketing, all underwriting, and all servicing.**

45. Opportunity Financial handles all acquisition, all marketing, all underwriting, and all servicing of the loans. For this reason as well, Opportunity Financial is the true lender.

46. Opportunity Financial pays for all the marketing of the loans. To that end, it pays tens of millions of dollars each year on marketing.

47. Opportunity Financial uses several methods to find potential borrowers. It sends prescreened direct mail. It employs email campaigns directed at borrowers. It uses search engine optimization, online lead generators, social media, and multimedia.

48. Opportunity Financial also targets consumers through other digital channels, as well as through its website, opploans.com.

49. Opportunity Financial markets the loans as "OppLoans." This is a trademarked product of Opportunity Financial's and the name that Opportunity Financial does business under. They are not named "FinWiseLoans." Nor "FirstElectronicLoans." Nor on behalf of any other rented bank.

50. Opportunity Financial creates the marketing materials and product offerings to promote the loans. Both the program guidelines used to operate the OppLoans program and the advertising materials that Opportunity Financial uses to promote OppLoans are Opportunity Financial's intellectual property.

51. Opportunity Financial is also the servicer for the loans. It has the exclusive license to use customer information and the right to contact and communicate with borrowers about potential loans.

52. Consumers who wish to obtain a loan must do so through Opportunity Financial's website, opploans.com. There is no other way to obtain the loans.

53. Consumers cannot obtain a loan through FinWise, First Electronic, or any other rented bank.

54. FinWise's website contains a page about loans offered by FinWise. That page markets FinWise's own lending products, none of which are the OppLoans product or anything remotely similar.

55. That page also contains a notice trumpeting products by FinWise's partners: "If you have received offers from our other Partners, please click the button below. Our Partners include American First Finance, Liberty Lending, Lendingpoint, OppLoans, Mulligan Funding, Behalf and rise." FinWise itself recognizes these are offers *from* OppLoans, not from FinWise.

56. Clicking that button then leads to a page showing 11 "partners"—i.e., the loans' true lenders. One of these is Opportunity Financial. The FinWise website contains a three sentence description of Opportunity Financial's loans, and directs visitors to Opportunity Financial's website to "Learn More."

57. First Electronic's website does not contain any information in any way about the loans or obtaining the loans. First Electronic does not reference Opportunity Financial or OppLoans in any way, and nobody visiting First Electronic's website could determine how to take out such a loan.

58. First Electronic's website references its "strategic partnership program" that "is custom-tailored to an individual partner's products and customer base in order to provide consumer and commercial financing solutions." Thus, First Electronic itself recognizes that these are loans from Opportunity Financial and to Opportunity Financial's customers.

59. Opportunity Financial's duties include finding and identifying eligible borrowers, processing the loan applications, maintaining the originals or copies of all loan documents, performing underwriting on the loan, establishing the account into which the proceeds from the loans are deposited, servicing the loans, collecting on the loans, and instituting collections and legal proceedings against borrowers who have defaulted.

60. Opportunity Financial executes all notices to consumers about the legal status of the loans and has the authority to grant loan modifications to borrowers.

61.     Opportunity Financial screens potential borrowers based on its own proprietary lending criteria. Nearly all the lending decisions for the loans are made by Opportunity Financial and its proprietary credit-decision-making algorithms. In total, the application and approval process takes around five minutes and is handled solely by Opportunity Financial.

62.     After a loan is approved, Opportunity Financial closely monitors the borrowers' bank account balances. They are looking for cash. If they see a relatively large balance, Opportunity Financial emails these borrowers and tells them they can get more money in their pocket if they refinance. That email then directs them to Opportunity Financial's website to complete the refinance application, which will ultimately refinance them into a new loan at the same 160% interest rate.

63.     Opportunity Financial sends these unsolicited refinance offers for one purpose: to get Opportunity Financial more money, at the cost of forcing its borrowers into deeper and deeper debt spirals. Opportunity Financial has found their marks, and it will bleed them dry.

64.     Opportunity Financial spends millions of dollars each year to support its national provision of the OppLoans product. This money is spent on advertisements, loan origination, collection, and technology costs.

### 3.     Opportunity Financial is the true lender because it bears all responsibilities under the loan contracts.

65.     Opportunity Financial bears all responsibilities under the loan contracts with the borrowers. FinWise, First Electronic, and the rented banks bear none. For this reason too, Opportunity Financial is the loans' true lender.

66.     The loans don't provide any address or contact information for FinWise, First Electronic, or any other rented bank. Instead, they provide Opportunity Financial's address, phone number, and email address. And the loans direct that all communications go through Opportunity Financial.

67.     The loans mention Opportunity Financial at least fifteen times. These references

include:

- a statement identifying Opportunity Financial and its address and phone number as the address for FinWise;

- "If the amount actually owing on the Maturity Date is more than the amount shown on the above Payment Schedule, then: (i) by contacting our servicer Opportunity Financial, LLC ('OppLoans') at (855) 990-9500 or info@opploans.com";

- "If you wish to change your payment method, you may contact us by communicating with Opploans at (855) 990-9500 or info@opploans.com";

- "You understand and acknowledge that you may terminate this authorization by notifying us at (855) 990-9500 or info@opploans.com or by mail to OppLoans, ATTN: Compliance Department, One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You may elect to receive advance notice of the date and amount of each regularly recurring Automated Payment that varies from the scheduled payments if you notify us by communicating with OppLoans at (855) 990-9500, or at One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "If you believe we have initiated a payment in a manner not contemplated by this authorization, then please contact OppLoans at (855) 990-9500, or One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You understand and acknowledge that you may terminate our authority to create and submit Remotely Created Checks by notifying us at (855) 990-9500 or info@opploans.com or by mail to OppLoans, ATTN: Compliance Department, One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You may elect to receive advance notice of the date and amount of each regularly recurring Remotely Created Check that varies from the scheduled payments if you notify us by communicating with OppLoans at (855) 990-9500, or at One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "If you believe we have presented a Remotely Created Check in a manner not contemplated by this authorization, then please contact OppLoans at (855) 990-9500, or One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "For questions, please contact: (855) 990-9500"; and

- "We may assign this Note at any time without your permission. Our transfer may be made by causing a registration of transfer in the record of ownership as described below, without providing you with any other notice ….

Ownership of this Note (and rights hereunder, including with respect to principal and interest) shall be registered in a record of ownership maintained by an entity specifically designated for such purposes. You hereby irrevocably appoint Opportunity Financial, LLC as your agent acting solely for the purpose of maintaining such record of ownership."

**C.      Opportunity Financial's loan contracts are forms prepared by Opportunity Financial and forced on the borrowers.**

68.      Opportunity Financial uses identical loan contracts (other than the principal amounts) for all loans to the Class.

69.      The loan contracts are forms prepared by Opportunity Financial and are contracts of adhesion. The terms are forced on the borrowers, and the borrowers have no ability to negotiate them.

70.      The loans, written in size 4.5 font, are practically illegible.

71.      The only persons who sign the loan contracts are the borrowers.

72.      Opportunity Financial does not sign them.

73.      Nobody signs the loans on behalf of Opportunity Financial. Nobody signs the loans on behalf of First Electronic, FinWise, or any other rented bank.

74.      After the loan contracts are purportedly consummated, the borrowers receive a copy of the loan contract. That contract is signed only by the borrower—nobody else.

**D.      The loans' arbitration clauses are void and unenforceable.**

75.      Opportunity Financial's loans contain arbitration clauses. Within that clause is also a class action and jury trial waiver.

76.      Any issues related "validity, enforceability, coverage, or scope" of the arbitration clause "shall be determined by a court."

77.      Arbitration clauses are invalid if the contract is void under generally applicable state law. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 343 (2011) ("This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply

only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.").

78.     The arbitration clause here is void under both state law and federal law.

79.     First, the arbitration clause is invalid and unenforceable because it is unconscionable and unenforceable under public policy. The arbitration clause is procedurally unconscionable. They are Opportunity Financial's form contracts offered on a take-it-or-leave-it basis to financially desperate borrowers. They are contracts of adhesion, and Opportunity Financial had all the bargaining power.

80.     The arbitration clause is also substantively unconscionable and separately unenforceable under public policy. It requires applying Utah law to the dispute. Utah law does not have any caps on interest rate. So by requiring that the arbitrator apply Utah law, the arbitration clause waives all the borrowers' claims and deprives them of any remedy for Opportunity Financial's misconduct. An arbitrator could not apply Texas law to determine whether the contract is unconscionable and could not even limit the application of the choice of law clause to the extent necessary to prevent substantial injustice, as Texas requires. Thus, the clause is overly harsh, unduly oppressive, and so one sided as to shock the conscience, as well as separately unenforceable under Texas public policy.

81.     The arbitration clause requires that the "Arbiter must enforce your agreements with us, as they are written." "Any rules that conflict with" that "don't apply." Thus, the arbitration agreement compels the arbitrator to enter judgment for Opportunity Financial and gives her no choice otherwise.

82.     The arbitration clause provides that "No arbitration award under this Agreement will affect any dispute involving any other party. No arbitration award under another party's agreement will affect any arbitration under this Agreement." This is unlawful and void because it violates fundamental principles of res judicata, collateral estoppel, and issue preclusion.

83.     Imagine if a borrower gets an order declaring the loans unlawful or a violation of RICO. That order becomes final. Fundamental offensive issue preclusion would treat that point as established against Opportunity Financial in all cases. If other borrowers sued, the only question remaining would be damages because liability is established.

84.     The arbitration clause effectively bars the arbitrator from applying any state or federal law on res judicata, collateral estoppel, or issue preclusion and bars the arbitrator from affording relief that would be required in a court of law.

85.     For all those reasons, the arbitration clause is both substantively unconscionable and unenforceable as a violation of public policy.

86.     Second, the arbitration clause is void as a prospective waiver of the Ms. Michael's rights under federal law by prospectively waiving her right to bring a RICO claim under Texas law.

87.     With the arbitration clause invalidated, the jury trial and class action waivers are also invalidated and unenforceable.

**E.      Ms. Michael's loans are over 130% APR, with a duration of 19 months.**

88.     Ms. Michael has taken out multiple loans with Opportunity Financial.

89.     She took out a loan from Opportunity Financial after January 2020 for an unlawful interest rate at more than double Texas' statutory maximum.

90.     She made payments on this loan.

91.     Opportunity Financial later contacted her about refinancing the loan and borrowing more money. This was entirely unsolicited.

92.     Ms. Michael accepted Opportunity Financial's offer and entered a new loan contract with Opportunity Financial. In June 2021, she borrowed $1,400 at an interest rate  of 130.54% APR), with a 16 month term. The majority of the money went to paying off her old loan. Attached as Exhibit A is a true and correct copy of that loan contract, with certain personal information redacted.

93.    Ms. Michael has made payments on this June 2021 loan.

94.    Ms. Michael's loan contracts are pre-printed form contracts. The terms were dictated by Opportunity Financial, and she had no opportunity for negotiation or modification.

95.    At no point has Ms. Michael ever communicated with any person employed by First Electronic or FinWise. All her communications were with Opportunity Financial.

## V.    CLASS ACTION

96.    Ms. Michael brings this lawsuit as a class action under Federal Rule of Civil Procedure 23. The putative class is defined as follows:

> All individuals in Texas who obtained a loan from, through, by way of, or with the assistance of Opportunity Financial on or after June 2, 2018, with an interest rate over 30% per year.
>
> Excluded from the Class are all employees of Opportunity Financial and any judicial officer assigned to this case.

97.    The Class has one sub-class: the RICO Sub-Class.

98.    The RICO Sub-Class is defined as follows:

> All individuals in Texas who obtained a loan from, through, by way of, or with the assistance of Opportunity Financial on or after June 2, 2018, with an interest rate over 60% per year.
>
> Excluded from this sub-class are all employees of Opportunity Financial and any judicial officer assigned to this case.

99.    Ms. Michael is a member of the Class and the RICO Sub-Class.

100.    Because all of Opportunity Financial's loans are over 130% per year, every borrower is a member of the Class and the Rico Sub-Class.

101.    *Numerosity*. The size of the Class and the RICO Sub-Class each comprise at least 15,000 persons. The size of the Class and the RICO Sub-Class grows daily.

102.    *Ascertainability*. The members of the Class and the RICO Sub-Class can be ascertained from Opportunity Financial's business records.

103.    *Common Questions of Fact or Law*. The lawsuit is suitable for class treatment because questions of law and fact have common answers that are the same for the Class and the

RICO Sub-Class, and those questions predominate over questions affecting only individual members. These common questions of law and fact include:

- Whether Opportunity Financial is the true lender on the loans;

- Whether the loans are governed by Texas law;

- Whether Opportunity Financial charged an interest rate in excess of what's allowed under Texas law;

- Whether the loans violate Texas law;

- Whether the arbitration clause is void;

- Whether the loans are void; and

- The appropriate remedies for Opportunity Financial's misconduct.

104. *Typicality and Adequacy*. Ms. Michael's claims are typical of the claims of the members of the Class and the RICO Sub-Class. The evidence and the legal theories about Opportunity Financial's alleged wrongful conduct are substantially the same for Ms. Michael and all members of the Class and the RICO Sub-Class. Ms. Michael will fairly and adequately represent and protect the interests of the Class and the RICO Sub-Class and has no interests adverse to them.

105. *Superiority*. This action is superior to other available methods for fairly and efficiently adjudicating the issues. Class certification will not present any significant management difficulties. Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments, incompatible standards, or impeding or impairing non-parties' interests. The expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to them without a class action.

106. *Conduct on Grounds that Apply to the Class*. Defendant has acted or refused to act on grounds that apply generally to the Class and the RICO Sub-Class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the Class and the RICO Sub-Class as a whole.

## VI.    CAUSES OF ACTION

107.    Ms. Michael re-alleges and incorporates by reference all the preceding paragraphs and allegations in each of the following causes of action.

### FIRST CAUSE OF ACTION
**Violation of Texas Usury Laws (e.g., Tex. Fin. Code §§ 342.001 *et seq.*, 349.001 *et seq.*, and 302.001 *et seq.*) by Michael, on behalf of herself and the Class, against Defendant**

108.    Opportunity Financial engaged in the business of making loans for personal, family, household, and other nonbusiness purposes with Ms. Michael and the Class.

109.    Opportunity Financial engaged in this activity in the State of Texas.

110.    The loans that Opportunity Financial transacted with Ms. Michael and the Class had an interest rate over 30% per year.

111.    While Opportunity Financial listed FinWise (and other Utah-chartered banks) as the lenders in the loan contracts, the true lender is Opportunity Financial.

112.    The loans to Ms. Michael and the Class violate Texas usury law because  their interest rate is over of 30% interest per year. Texas Fin. Code § 342.201.

113.    As a result, Ms. Michael and the Class are entitled to recover twice the total amount of interest paid, legal fees, and costs. *Id.* §§ 349.001(a), 349.003(a), 349.403(e).

114.    The Class is also entitled to an award of no more than $100,000 per violation. *Id.* § 349.403(d). Opportunity Financial committed over 15,000 violations.

### SECOND CAUSE OF ACTION
**Violation of Texas Usury Laws (e.g., Tex. Fin. Code §§ 342.001 *et seq.*, 349.001 *et seq.*, and 302.001 *et seq.*) by Michael, on behalf of herself and the RICO Sub-Class, against Defendant**

115.    Opportunity Financial engaged in the business of making loans for personal, family, household, and other nonbusiness purposes with Ms. Michael and the RICO Sub-Class.

116.    Opportunity Financial engaged in this activity in the State of Texas.

117. The loans that Opportunity Financial transacted with Ms. Michael and the RICO Sub-Class had an interest rate over 60% per year.

118. While Opportunity Financial listed FinWise (and other Utah-chartered banks) as the lenders in the loan contracts, the true lender is Opportunity Financial.

119. The loans to Ms. Michael and the RICO Sub-Class violate Texas usury law because their interest rate is over of 60% interest per year. *Id.* § 342.201.

120. As a result, Ms. Michael and the RICO Sub-Class are entitled to recover (1) all principal payments, (2) twice the amount of interest payments, and (3) legal fees and costs. *Id.* §§ 349.001(a), 349.002, 349.003(a), 349.403(e).

121. The RICO Sub-Class is also entitled to an award of no more than $100,000 per violation. *Id.* § 349.403(d). Opportunity Financial committed over 15,000 violations.

### THIRD CAUSE OF ACTION
### Unjust Enrichment
### by Michael, on behalf of herself and the Class, against Defendant

122. All Opportunity Financial's loans made to the Class are void and unenforceable.

123. Ms. Michael and the Class conferred a benefit on Opportunity Financial when they repaid the loans. Opportunity Financial knew or should have known of the benefit. And Opportunity Financial has been unjustly enriched through their receipt of those payments.

124. Accordingly, Plaintiff and the Class seek to recover all amounts paid on the loans from Opportunity Financial.

### FOURTH CAUSE OF ACTION
### Declaratory Relief
### by Michael, on behalf of herself and the Class, against Defendant

125. The law allows a party to obtain a judicial declaration on rights or duties under a written contract. An actual and present controversy has arisen on the rights and duties of the respective parties under the loan contracts.

126. Ms. Michael and the Class contend that Opportunity Financial is the true lender on the loans; that the loan agreements are governed by Texas law; the arbitration clause, jury

waiver, class waiver, and prohibition of res judicata, collateral estoppel, and issue preclusion are void, and unenforceable; and the loan contracts are unconscionable, void, and unenforceable.

127. On the other hand, Defendant contends the Utah bank is the true lender on the loans at issue; that the loan agreements are governed by Utah law; and that the loan contracts and arbitration clauses are valid and enforceable.

128. Accordingly, Ms. Michael and the Class seek a judicial declaration pursuant to 28 U.S.C. § 2201 and Tex. Civ. Prac. & Rem. Code §§ 37.001 *et seq.* that:

- Opportunity Financial is the true lender on the loans;

- the loans are governed by Texas law;

- the loan contracts are void and unenforceable;

- the loan contracts are unconscionable, void, and unenforceable

- the loan contracts' arbitration clause is unconscionable, void, and unenforceable;

- the arbitration clause's class waiver is unconscionable, void, and unenforceable in light of the invalidated arbitration clause;

- the arbitration clause's jury waiver is unconscionable, void, and unenforceable in light of the invalidated arbitration clause; and

- the arbitration clause's prohibition of res judicata, collateral estoppel, and issue preclusion is unconscionable, void, and unenforceable.

**FIFTH CAUSE OF ACTION**
**for Violation of 18 U.S.C. § 1962(c) (RICO Association-in-Fact Enterprise)**
**by Michael, on behalf of herself and the RICO Sub-Class, against Defendant**

129. Opportunity Financial violated 18 U.S.C. § 1962(c).

130. *Association in-fact enterprise.* The Illegal Loans Enterprise engaged in activities that affected interstate commerce.

131. The following persons, and others presently unknown, have been members of and constitute an association-in-fact enterprise within the meaning of RICO, and will be referred to collectively as the Illegal Loans Enterprise:

- Opportunity Financial: the creator, director, funder, implementer, orchestrator, and operator of the rent-a-bank scheme; and

- FinWise: the bank that agreed to be rented by allowing Opportunity Financial to purportedly close loans in FinWise's name, while Opportunity Financial maintains all risk of loss and holds the predominant economic interest.

132. Each of these entities holds uniquely distinct roles.

133. The Illegal Loans Enterprise is an association-in-fact enterprise of corporate entities and individuals. It comprises persons associated together for a common purpose.

134. The Illegal Loans Enterprise has an ongoing organization with an ascertainable structure and functions as continuing unit with separate roles and responsibilities.

135. While the members of the Illegal Loans Enterprise participate in the conduct of that enterprise, they each have an existence separate and distinct from the enterprise.

136. *Operation and control of the Illegal Loans Enterprise.* At all relevant times, Opportunity Financial knowingly conducted the Illegal Loans Enterprise's affairs or knowingly participated, directly or indirectly, in the conduct of the enterprise's affairs.

137. At all relevant times, Opportunity Financial operated, controlled, or managed the Illegal Loans Enterprise through various actions.

138. Opportunity Financial directed, operated, and managed the affairs of the Illegal Loans Enterprise.

139. Opportunity Financial could not accomplish the enterprise's affairs on its own. To succeed in states with interest rate caps, Opportunity Financial needed to rent a bank that Opportunity Financial could claim as the purported lender on the loans.

140. Opportunity Financial rented at least three Utah state-chartered banks, primarily FinWise but also others such as First Electronic. Opportunity Financial entered contracts with those banks to effect the rent-a-bank scheme and the Illegal Loans Enterprise. The Illegal Loans Enterprise and rent-a-bank scheme could not proceed without those banks.

141. *Common purpose of the Illegal Loans Enterprise.* The common purpose of the Illegal Loans Enterprise is to enter loan transactions with the Class at interests rates of over 60% interest per year.

142.    *Collection of unlawful debt.* It is unlawful for a RICO enterprise to engage in the collection of an "unlawful debt." 18 U.S.C. § 1962(c).

143.    An "unlawful debt" is a debt (A) "which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury" and (B) "which was incurred in connection with … the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

144.    The loans that Opportunity Financial issued to Ms. Michael and the RICO Sub-Class are unlawful debts under RICO.

145.    The loans issued to Ms. Michael and the RICO Sub-Class are more than two times the amount permitted by Texas laws relating to usury.

146.    The loans issued to Ms. Michael and the RICO Sub-Class were incurred in connection with the business of lending money at a rate usurious under Texas law, where the usurious rate is at least twice the enforceable rate.

147.    Texas law caps the interest rates on loans by licensed lenders at no more than 30% per year.

148.    Opportunity Financial's loans are unenforceable under Texas' laws relating to usury.

149.    The loans to Ms. Michael and the RICO Sub-Class are void. Ms. Michael and the Class are entitled to recover: (1) all principal payments, (2) twice the amount of interest payments, (3) an award of no more than $100,000 per violation (and there are over 15,000 violations), and (4) legal fees and costs. Texas Fin. Code §§ 349.001(a), 349.002, 349.003(a), 349.403(d).

150.    A single instance of a collection of an unlawful debt violates RICO. That said, Opportunity Financial engaged in widespread misconduct and issued over 15,000 loans to the RICO Sub-Class. All of these loans are unlawful debts under RICO.

151.    *Longevity*. The Illegal Loans Enterprise has a longevity sufficient to permit Opportunity Financial to pursue the enterprise's purpose. Opportunity Financial spent years, material amounts of money, and significant time and resources to develop the rent-a-bank scheme. It has been operating that scheme for at least five years.

152.    *Injury*. Ms. Michael and the RICO Sub-Class were injured as a direct result of Opportunity Financial's violations of 18 U.S.C. § 1962(c), by the payment of unlawful and usurious interest rates on loans made by Opportunity Financial which would not have been made but for Opportunity Financial's conduct.

153.    Ms. Michael and the RICO Sub-Class were also injured because they made payments repaying principal. Opportunity Financial was not entitled to the return of principal.

154.    Opportunity Financial is liable for actual damages, treble damages, and legal fees pursuant to 18 U.S.C. § 1964(c).

**SIXTH CAUSE OF ACTION**
**for Violation of 18 U.S.C. § 1962(d) (RICO Conspiracy)**
**by Michael, on behalf of herself and the RICO Sub-Class, against Defendant**

155.    Ms. Michael re-alleges and incorporates paragraphs 129–154.

156.    Opportunity Financial violated 18 U.S.C. § 1962(d) by conspiring to violate § 1962(c).

157.    Opportunity Financial knowingly agreed to facilitate the Illegal Loans Enterprise, which allowed the enterprise to make and collect unlawful debt at more than twice the lawful rate of interest under Texas usury law.

158.    This knowledge is evidenced in part by Opportunity Financial's spearheading the creation of the rent-a-bank scheme.

159.    Ms. Michael and the RICO Sub-Class were injured as a direct result of Opportunity Financial's violations of 18 U.S.C. § 1962(d), by the payment of unlawful and usurious interest rates on loans made by Opportunity Financial which would not have been made but for Opportunity Financial's conduct.

160.     Ms. Michael and the RICO Sub-Class were also injured because they made

payments repaying principal. Opportunity Financial was not entitled to the return of principal.

161.     Opportunity Financial is liable for actual damages, treble damages, and legal fees

pursuant to 18 U.S.C. § 1964(c).

## VII.  PRAYER FOR RELIEF

162.     Ms. Michael requests that the Court enter the following relief against Defendant

as follows:

- An order certifying the Class and the RICO Sub-Class;

- Judgement against Defendant;

- Compensatory damages, including all payments of principal, twice the amount of all interest payments, and twice the amount of all owed interest payments in an amount yet to be ascertained;

- An award of no more than $100,000 per violation;

- Treble and punitive damages, in an amount yet to be ascertained;

- An order declaring that: (1) Opportunity Financial is the true lender on the loans; (2) the loans are governed by Texas law; (3) the loan contracts are void and unenforceable against Ms. Michael and the Class members; (4) the loan contracts' arbitration clause is unconscionable, void, and unenforceable; (5) the loan contracts' class waiver is unconscionable, void, and unenforceable; (6) the loan contracts' jury waiver is unconscionable, void, and unenforceable; (7) the loan contracts' prohibition of res judicata, collateral estoppel, and issue preclusion is unconscionable, void, and unenforceable; and (8) the loan contracts are unconscionable, void, and unenforceable;

- Prejudgment interest;

- An injunction that that (1) bars Defendant from directly or indirectly offering, providing, advertising, or acting as a service provider for any loans over the maximum interest rate; (2) requiring Defendant to give individualized notice to all Class members of their rights under all applicable laws; (3) requiring Defendant to provide individualized notice to each such consumer of the procedures available for enforcing the consumer's rights under applicable Texas laws; (4) voiding the loans and barring Opportunity Financial from enforcing them, and (5) establishing an effective monitoring mechanism to ensure Defendant's continued compliance with the terms of the injunction

- Restitution of all money paid to Defendant, in an amount yet to be ascertained;

- Legal fees and costs pursuant to 18 U.S.C. § 1964(c) and Texas Financial Code §§ 349.001(a), 349.002, 349.403(e);

- Costs and expert witness fees; and

- For such other relief that the Court deems just and proper.

Dated: June 1, 2022

_/s/ John R. Davis_
John Davis (Texas Bar # 24099518)
jdavis@slackdavis.com
SLACK DAVIS SANGER LLP
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
(703) 910-5062

Dan Terzian (*pro hac vice* application forthcoming)
dan.terzian@warrenterzian.com
WARREN TERZIAN LLP
222 N. Pacific Coast Highway, Suite 2000
Los Angeles, CA 90245
(213) 410-2620

*Counsel for Plaintiff Kristen Michael*

## DEMAND FOR JURY TRIAL

Plaintiff Kristen Michael and the Class demand a trial by jury on all issues so triable.


Dated: June 1, 2022

/s/ John R. Davis
_____

John Davis (Texas Bar # 24099518)
jdavis@slackdavis.com
SLACK DAVIS SANGER LLP
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
(703) 910-5062

_____

Dan Terzian (*pro hac vice* application
   forthcoming)
dan.terzian@warrenterzian.com
WARREN TERZIAN LLP
222 N. Pacific Coast Highway,
   Suite 2000
Los Angeles, CA 90245
(213) 410-2620

*Counsel for Plaintiff Kristen Michael*