**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **Kristen Michael,** an individual on behalf of herself and all persons similarly situated, | |
| Plaintiff, | |
| | Civil Action No.: 1:22-cv-00529-LY |
| v. | |
| | Judge Lee Yeakel |
| **Opportunity Financial, LLC,** a limited liability company, | |
| Defendant. | |

**DEFENDANT OPPORTUNITY FINANCIAL, LLC'S OPPOSED MOTION TO**
**COMPEL ARBITRATION AND DISMISS OR STAY**

Defendant, Opportunity Financial, LLC ("OppFi"), respectfully moves this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* ("FAA"), for an Order compelling Plaintiff Kristen Michael ("Plaintiff") to submit her claims to arbitration pursuant to the binding Arbitration Agreement governing her loan agreement forming the basis of such claims, and to dismiss this case or, in the alternative, stay this case pending the completion of arbitration.

## I.   <u>INTRODUCTION</u>

Plaintiff asserts claims against OppFi arising out of loans she obtained from FinWise Bank ("FinWise"). Plaintiff alleges that her loan agreement (the "Promissory Note") is unenforceable because the interest rate exceeds Texas's interest rate cap. This argument is meritless, and at the appropriate time OppFi will seek to have it dismissed. But this is neither the time nor the forum for that: the parties expressly agreed to arbitrate these claims pursuant to a binding arbitration agreement that must be enforced under the FAA.

To obtain her loan, Plaintiff entered into a Promissory Note with FinWise that included an arbitration clause (the "Arbitration Agreement"). The Arbitration Agreement requires Plaintiff to arbitrate any claims arising from or related to the Promissory Note, including any claims against OppFi. Plaintiff does not dispute the existence of the Arbitration Agreement or that her claims fall within the Arbitration Agreement's broad scope. Instead, her Complaint anticipatorily argues that the Arbitration Agreement is "void" for two reasons. Doc. 1, ¶ 78. Plaintiff is wrong. Neither theory has merit.

Plaintiff's first theory is that the Arbitration Agreement is unconscionable. It is not. As a threshold matter, the Arbitration Agreement included an opt-out provision that provided the Plaintiff with 60 days to opt out of the Arbitration Agreement. She choose not to exercise that option. The existence of this opt-out option precludes a finding of procedural unconscionability.

Moreover, each of Plaintiff's substantive unconscionability arguments fails:

- **Choice of Law.**  Plaintiff's first substantive unconscionability argument is that the Utah choice-of-law clause in the Promissory Notes renders the Arbitration Agreement within unconscionable and against public policy.  Plaintiff is wrong for several reasons.  To start, the choice-of-law clause governs the entire Promissory Note and, as such, Plaintiff's argument is foreclosed by *Buckeye Check Cashing, Inc. v. Cardegna ("Buckeye")*, 546 U.S. 440 (2006) and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* ("*Prima Paint*"), 388 U.S. 395 (1967).  Under *Buckeye* and *Prima Paint*, "an arbitration provision is severable from the remainder of the contract" in which it appears, and in deciding a motion under the FAA, a court may only consider a challenge that is directed "specifically to the arbitration clause." *Buckeye*, 546 U.S. at 440, 445. Because the choice-of-law clause that Plaintiff attacks applies generally to the Promissory Note, not the Arbitration Agreement specifically, this argument is for the arbitrator.  In any event, the presence of a choice-of-law clause is not a basis to avoid arbitration because the arbitrator will be permitted to conduct a choice-of-law analysis when evaluating the merits of the dispute, and Plaintiff may argue for the applicability of Texas law at that time.

- **Enforcing Arbitration Agreements as Written**.  Plaintiff's second substantive unconscionability argument is that the Arbitration Agreement is unconscionable and against public policy because it requires the arbitrator to enforce the agreements "as they are written."  This is a red herring.  There is nothing untoward, much less controversial, about advising a consumer that the arbitrator will apply the cardinal principle of contract interpretation that the plain text of an agreement governs.  This rule applies equally in court as it does in arbitration.

- **Preclusion**.  Plaintiff's last substantive unconscionability argument claims that the portion of the Arbitration Agreements providing that "[n]o arbitration award under this Agreement will

affect any dispute involving any other party" is "unlawful and void" because it purportedly prevents borrowers from offensively using issue preclusion against OppFi in the event that *another borrower* prevails in arbitration. Doc. 1, ¶¶ 82-84. This argument is baseless. It is well-settled that parties can agree to limit the preclusive effect of arbitration awards.

Plaintiff's second theory is predicated on the faulty assumption that the Arbitration Agreement prospectively waives her rights under federal law. Not so. Here, the Promissory Note's choice-of-law clause provides that the Note is governed by federal or Utah law. The inclusion of either source of law is more than sufficient standing alone to prevent a prospective waiver of Plaintiff's federal claims.

Finally, even if this Court finds merit to any of Plaintiff's arguments, arbitration is still appropriate. State law, the FAA, and the severability clause make clear that the proper remedy is to sever any unconscionable clauses and compel arbitration.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Agreed to Arbitrate.

Plaintiff alleges that she is a Texas resident, Doc. 1, ¶ 13, who applied for and received a loan from FinWise. *Id.*, Ex. A. To obtain this loan, Plaintiff entered into a Promissory Note that set forth the terms governing the loan. *Id.* Plaintiff does not dispute she signed the Promissory Note, which provides that "by signing this Note…You acknowledge that you have read, understand, and agree to all the terms of this Note, including the **Arbitration [Agreement]**." Doc. 1-2, p. 7. The Arbitration Agreement, in turn, covers and requires arbitration of "all 'Claims' of one party against another," specifically applies to claims against OppFi, and provides that "the word 'Claims' has the broadest possible meaning consistent with this Clause," and specifically "includes all claims even indirectly related to your application, the loan, this Note and your

agreements with us." *Id.* ¶ 21 (p. 4).

Importantly, the Arbitration Agreement also contains an opt-out provision permitting Plaintiff to opt out of the Arbitration Agreement within sixty days of entering into her agreement by providing written notice. *Id.* ¶ 21 (p. 6). The opt-out provision was prominently displayed in multiple places, including at the top of the Promissory Note in bold text and within the Arbitration Agreement itself. *Id*. at p. 1 (**"You can 'opt out' of the Arbitration Clause as set forth below."**); *id.* ¶ 21 (p. 6) (providing terms governing opt-out). Plaintiff does not allege she opted out— because she did not.

### B.   The Complaint and Plaintiff's Allegations.

On June 1, 2022, Plaintiff filed a Complaint against OppFi. Plaintiff alleges she obtained a loan "for an unlawful interest rate at more than double Texas'[s] statutory maximum" interest rate. Doc. 1, ¶ 89; *see also id.* ¶¶ 88-95. Plaintiff attached the Promissory Note governing the loan to her Complaint. Doc. 1-2. The Promissory Note identifies FinWise as the "Lender," *id.* at p. 1, provides that FinWise will formally "extend credit" to Plaintiff, *id.* at p. 1, and makes clear that Plaintiff "promise[d] to pay [FinWise] . . . until the loan is fully paid." *Id.* ¶ 3. The Promissory Note also identifies OppFi as the servicer on the loan. *Id.* ¶ 4.

Notwithstanding the language in the Promissory Note indicating FinWise was the party extending her credit, Plaintiff alleges that OppFi is actually the "true lender" because it "holds the predominant economic interest" in the loan transaction. Doc. 1, ¶ 7. Plaintiff asserts that because OppFi is the lender, it is subject to the interest rate cap in the Texas Finance Code, which the interest rate on her loan exceeds. *Id.* ¶¶ 26-29, 108-121, 145. As a result, Plaintiff contends that her loan agreement is "void and unenforceable," *id.* ¶ 12, and that OppFi violated Texas's usury law and the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, *et*

*seq*. *Id.* ¶¶ 108-121, 129-161.  Plaintiff also asserts a claim for unjust enrichment and seeks declaratory relief. *Id.* ¶¶ 122-128.

Finally, Plaintiff raises two challenges to arbitration in her Complaint.  <u>First</u>, Plaintiff argues that "the arbitration clause is invalid and unenforceable because it is unconscionable." Doc. 1, ¶ 79.  The Arbitration Agreement is procedurally unconscionable, Plaintiff contends, because OppFi presented the Arbitration Agreement "on a take-it-or-leave-it basis" and the Promissory Note is a "contract[] of adhesion." *Id.*  And Plaintiff argues that the Arbitration Agreement is substantively unconscionable because (1) it requires "applying Utah law to the dispute," *id.* ¶ 80; (2) it requires the arbitrator to "enforce [the] agreements . . . as they are written," *id.* ¶ 81; and (3) it would allegedly prevent the arbitrator from applying the doctrine of nonmutual offensive collateral estoppel in the event another borrower prevails in arbitration against OppFi. *Id.* ¶¶ 82-84.  Plaintiff contends that the Arbitration Agreement is "unenforceable under public policy" for the same reasons it is substantively unconscionable.  *Id.* ¶¶ 82-84.  <u>Second</u>, Plaintiff asserts that the Arbitration Agreement is "void as a prospective waiver of" her "rights under federal law." *Id.* ¶ 86.  As explained below, none of these challenges preclude enforcement of the Arbitration Agreement.

## III.   <u>LEGAL STANDARD</u>

The FAA "creates a body of federal substantive law" that is applicable in both state and federal courts.  *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984).  It reflects a "liberal federal policy favoring arbitration," and the primary purpose of the FAA is to ensure the enforcement of arbitration agreements according to their terms.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344-45 (2011).  In evaluating a motion to compel under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*

*v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  The party seeking to avoid arbitration has the burden of showing that the arbitration provision is unenforceable.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).  The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985).

## IV.   ARGUMENT

### A.   The FAA Applies to the Arbitration Agreements.

The FAA governs this Court's review of the Arbitration Agreement for two reasons.  First, it governs because the Arbitration Agreement explicitly selects the FAA as the governing law.  Doc. 1-2, ¶ 17 ("[T]he Arbitration Clause is governed by the Federal Arbitration Act"); ¶ 21 (providing that "the FAA governs" any arbitration and "[t]he Arbiter must apply substantive law consistent with the FAA").  The FAA applies when such a selection is made.  *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 706, 709 (5th Cir. 2002) (applying FAA where arbitration agreement provided it would be "governed by the Federal Arbitration Act").

Second, the FAA governs contracts involving interstate commerce, 9 U.S.C. §§ 1-2, which is the case here.  The individual transaction at issue need not have "any specific effect upon interstate commerce" to meet this threshold requirement.  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-58 (2003).  Instead, it is sufficient that the "general practice…bear[s] on interstate commerce in a substantial way."  *Citizens Bank*, 539 U.S. at 57.  This case satisfies the FAA's minimal interstate commerce requirement.  Courts regularly recognize that contracts governing loans between borrowers in one state and an out-of-state entity providing an extension of credit involve interstate commerce.  *See Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1055, 1057

(9th Cir. 2013) (applying FAA to arbitration clause between national bank and consumer); *Jenkins v. First Am. Cash Advance of Georgia., LLC*, 400 F.3d 868, 874 (11th Cir. 2005) (holding the "FAA's broad interstate commerce requirement is satisfied" because "[t]he lending transactions were between . . . a Georgia resident, and . . . a national bank located in South Dakota"); *Regions Bank v. Britt*, 642 F. Supp. 2d 584, 590 (S.D. Miss. 2009) (FAA applied where "the subject loan transactions involved both electronic communications and funds crossing state lines"). This is such a case. Plaintiff is a Texas resident and citizen that obtained a loan from a Utah bank (FinWise) that would be serviced by OppFi, a limited liability company with its principal place of business in Illinois. Doc. 1, ¶¶ 13-19, 38. As such, the FAA governs.

### B.   Plaintiffs Agreed to Arbitrate This Dispute.

Plaintiff does not dispute that she entered into the Arbitration Agreement, or that the agreement's scope covers the claims she alleges here. Nor could she. Plaintiff signed a Promissory Note that made clear that by signing it, she was agreeing to be bound to the Arbitration Agreement, which expressly covers claims "related to your application, the loan, this Note and your agreements with us." *Supra* § II.A. Here, the claims are directly "related to [Plaintiff's] application, the loan, th[e] Note, and [her] agreements." Plaintiff claims her loan is void and unenforceable because the interest rate in the Promissory Note violates Texas law. *Supra* § II.B. These claims fall squarely within the scope of the Arbitration Agreements.

### C.   Plaintiff's Challenges to Arbitration Fail.

#### 1.   Plaintiff's Unconscionability Challenges Fails.

"Under Texas law, arbitration agreements may be *either* substantively or procedurally unconscionable, or both." *See Zorilla v. Uber Techs., Inc.*, No. 4:16-CV-615, 2017 WL 3278061, at *6 (S.D. Tex. Mar. 16, 2017) (citing *In re Palm Harbor Homes*, Inc., 195 S.W.3d 672, 679 (Tex.

2006)). "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006). Substantive unconscionability arises where a clause is "'so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Id.* at 678 (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)). A contract is substantively unconscionable on the ground that it is "against public policy when it is illegal or inconsistent with the public's best interest." *Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 297 (Tex. App.—San Antonio 2008, no pet.). "Whether an agreement is procedurally unconscionable rests on whether there is unfair surprise or oppression." *Zorilla*, 2017 WL 3278061, at *7. The Arbitration Agreement is not unconscionable by either measure.[1]

### (a)   Plaintiff's Capacity and the Arbitration Agreement's Opt-Out Provision Preclude a Finding of Procedural Unconscionability.

Plaintiff's claim of procedural unconscionability has two unsurmountable flaws. To start, Plaintiff's allegation that the Arbitration Agreement is an adhesion contract between parties of unequal bargaining power, Doc. 1, ¶ 79, does not come close to demonstrating procedural unconscionability. Contrary to Plaintiff's suggestion, "[a]dhesion contracts are not automatically unconscionable." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005). Indeed, "[t]he only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the

---

[1] The court need not conduct a choice-of-law analysis as between Texas and Utah because the conclusion is the same under each state's law. *See Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559 (5th Cir. 2011) (no need for a choice-of-law analysis if the same result would be reached under either state's law). Utah requires both procedural and substantive unconscionability but, as explained herein, Plaintiff cannot establish either. *See Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1040-46 (Utah Sup. Ct. 1985) (describing Utah unconscionability law). OppFi reserves the right to argue Utah law applies to the substantive claims in arbitration.

agreement." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002), *opinion supplemented on denial of reh'g,* 303 F.3d 570 (5th Cir. 2002) (citing cases finding unconscionability where the plaintiff was "functionally illiterate" or "did not speak English"). Any "imbalance in the relative sophistication of the parties," *see id.*, or difference in bargaining positions is not enough, *Zorilla*, 2017 WL 3278061, at *7. Yet Plaintiff stakes her unconscionability claim on exactly those circumstances; for that reason alone, the argument fails.

In any event, Plaintiff's Arbitration Agreement has an opt-out clause, which belies her allegation that she had no choice but to accede to arbitration. Under the Arbitration Agreement, Plaintiff had 60 days to opt out of arbitration entirely by simply providing written notice. Doc. 1-2, ¶ 21 (p. 6). Further, "[t]he [A]rbitration [A]greement was not couched as an ultimatum"— Plaintiff's decision to opt out would not affect her ability to receive the benefits under the Promissory Note. *Barker v. Citibank, (S. Dakota), N.A.*, No. A:03CA-130 JN, 2003 WL 25943008, at *2 (W.D. Tex. May 30, 2003). Under these circumstances, courts have consistently held that an arbitration agreement that permits a signee to opt out is not procedurally unconscionable. *Zorilla*, 2017 WL 3278061, at *7 (rejecting unconscionability challenge to delegation clause where the "[p]laintiffs were under no pressure or obligation to even enter the arbitration agreement because the November 2014 Agreement contained an Opt-Out clause"); *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 848 (W.D. Tex. 2016) (echoing the same reasoning to reject challenge to a delegation clause); *Barker*, 2003 WL 25943008, at *2 (enforcing arbitration agreement with opt out in the face of procedural unconscionability claim where the plaintiff could continue to use account even after opting out). Plaintiff's procedural unconscionability claim thus falters on this ground as well.

       **(b)**    **Plaintiff's Substantive Unconscionability Challenges Fail.**

The road is no smoother for Plaintiff's substantive unconscionability arguments, which all fail.

> **(i)**      ***Prima Paint*** **and** ***Buckeye*** **Foreclose Plaintiff's Challenges to the Utah Choice-of-Law Clause.**

As explained above, the Complaint purports to identify a series of reasons why the Arbitration Agreement is substantively unconscionable.   However, binding Supreme Court case law precludes this Court from even considering Plaintiff's first challenge, which questions the validity of the Promissory Note's choice-of-law clause.   That provision is not found in the Arbitration Agreement and does not specifically apply to arbitration.   As such, Plaintiff challenges the Promissory Note in whole, not the Arbitration Agreement, specifically.   Under *Prima Paint* and *Buckeye*, such challenges can only be heard by an arbitrator.

In *Prima Paint*, the Supreme Court established a substantive federal "rule of severability" under which challenges specific to an arbitration clause are heard by a court, while challenges that apply to an agreement as a whole are reserved for the arbitrator.   *Buckeye*, 546 U.S. at 446.   The Supreme Court applied the *Prima Paint* rule in *Buckeye*, where borrowers brought a putative class action against their lender, alleging the lender charged usurious interest rates.   *Buckeye,* 546 U.S. at 442-43.   The lender moved to compel arbitration, which the borrowers resisted on the grounds that the usurious interest rendered the entire loan agreement—including the arbitration clause— void *ab initio*.   *Id.* at 443-44.   On appeal, the Supreme Court noted that there are two types of challenges to an arbitration agreement:

> One type challenges specifically the validity of the agreement to arbitrate.   The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

*Id.* at 444 (citations omitted).   In considering the challenge before it, the Supreme Court concluded

the challenge was the second type that must be heard by the arbitrator because "[t]he crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge." *Id.* The Supreme Court also reiterated that under *Prima Paint*, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 446.

The division of labor between courts and arbitrators is clear after *Buckeye*: if a plaintiff's challenge is predicated on the argument that an arbitration clause is void merely because the entire contract is invalid, only an arbitrator may resolve it. *See, e.g.*, *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 396 (5th Cir. 2019) (concluding that "[d]espite [plaintiff's] attempts to narrowly frame his arguments to challenge only the arbitration agreement, [his] contention of not being able to read the contract pertains to the validity of the contract as a whole" and thus it is reserved for arbitrator); *Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P.*, 853 F.3d 804, 817–18 (5th Cir. 2017), *as revised* (Apr. 12, 2017) (noting that "[a]n argument that fraud induced a contract is not the equivalent of a contention that there was 'fraud in the inducement of the arbitration clause itself'" and holding that enforceability challenge based on Mississippi law "fails because it is not, in actuality, a challenge directed specifically to the agreement to arbitrate"); *Aircraft Consultants, Inc. v. Aerocon, Ltda*, No. A-12-CV-864-LY, 2013 WL 11311777, at *3 (W.D. Tex. Jan. 31, 2013) (Yeakel, J.) (characterizing challenge as one to arbitration clause insufficient to avoid sending challenge to arbitration where the party "in effect seek[ed] to invalidate the contract as a whole").

Applying this principle, Plaintiff's unconscionability challenge to the Utah choice-of-law

clause is for the arbitrator.[2]  Contrary to Plaintiff's characterization, the choice-of-law clause at issue is not within the Arbitration Agreement or specific to the Arbitration Agreement; instead, it applies to the Promissory Note as a whole.  The challenged choice-of-law clause is in Paragraph 17 of the Promissory Note, whereas the Arbitration Agreement is in Paragraph 21.  Doc. 1-2. Moreover, the choice-of-law clause makes clear that the "Note is governed by federal laws and the law of the State of Utah," whereas the "Arbitration Clause is governed by the Federal Arbitration Act."  Doc. 1-2, ¶ 17.  As such, Plaintiff's attack on the Utah choice-of-law clause is an attack on the Promissory Note as a whole.  Under *Prima Paint* and *Buckeye*, any challenge to the Promissory Note's choice-of-law clause is for the arbitrator, not the court.

Judge Chestney recently agreed and rejected the identical argument Plaintiff raises here. *Broussard v. FinWise Bank, Inc.*, No. SA-21-CV-01238-OLG, 2022 WL 2057488 (W.D. Tex. May 12, 2022).  The court did not invoke *Buckeye*, but explained that "it will be for the arbitrator to determine whether choice-of-law principles require the application of Texas rather than Utah law.  Plaintiff's concerns about choice-of-law are not properly before this Court as the issue 'must be decided in the first instance by the arbitrator.'"  *Id.* (quoting *Vimar Seguros Y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995)); *see also Tura v. Med. Shoppe Int'l, Inc.*, No. CV 09-7018 SVW (VBKx), 2010 WL 11506428, at *1 (C.D. Cal. Mar. 3, 2010) (rejecting argument that Missouri choice-of-law clause would improperly prohibit her from raising California law claims in arbitration because "[i]f the arbitration provision is enforceable, then the arbitrator must decide the parties' substantive rights—including whether the choice-of-law provision impermissibly curtails Plaintiffs' substantive rights under California law").

---

[2] The Arbitration Agreement reinforces and reiterates the *Buckeye* rule, providing that all claims are to be determined by an arbitrator except for "claims related to the validity, scope, or enforceability of this clause," which "shall be determined by a Court."  Doc. 1-2, ¶ 21, (p. 4).

Here, as in *Broussard*, Plaintiff's objections to the choice-of-law clause have nothing to do with arbitration. Her concern is that when it comes time to adjudicate the merits, the arbitrator will be bound to follow Utah law, and will have no discretion in determining what law applies to the claims. But the Arbitration Agreement says nothing whatsoever about an arbitrator's ability to conduct a choice-of-law analysis as between Texas and Utah law. And courts—including this Court in *Broussard*—have found that it is entirely appropriate for an arbitrator to conduct a choice-of-law analysis before evaluating the substantive claims. *See, e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 676–77 (2010) (suggesting that an arbitration panel should conduct a choice-of-law analysis to determine whether maritime law or New York state law should apply); *Vimar Seguros Y Reaseguros*, 515 U.S. at 541 (concluding that argument that arbitration agreement was unenforceable because the arbitrator might apply foreign law was premature because the choice-of-law question "must be decided in the first instance by the arbitrator"); *Wainwright v. Melaleuca, Inc.*, No. 2:19-cv-02330-JAM-DB, 2020 WL 417546, at *2-4, *6 (E.D. Cal. Jan. 27, 2020), *aff'd*, 844 F. App'x 958 (9th Cir. 2021) (holding that despite Idaho choice-of-law clause, the arbitrator may conduct choice-of-law analysis to determine whether to instead apply California law).

Indeed, the Arbitration Agreement specifically authorizes this analysis by requiring "[t]he Arbiter [to] apply substantive law consistent with the FAA," Doc. 1-2, ¶ 21 (p. 4), because choice-of-law rules are substantive law, *Rosenberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir. 1985). And as an arbitrator has not yet determined which law to apply, Plaintiff's claim that the Utah choice-of-law is unconscionable as against public policy is premature. *See* Doc. 1, ¶ 80.

Accordingly, it is not the case that an arbitrator *must* apply Utah law to Plaintiff's substantive claims because the Promissory Note contains a Utah choice-of-law clause. Instead,

the Arbitrator is free to conduct an independent choice-of-law analysis, just as a Texas or Utah court would.  And, more fundamentally, Plaintiff's challenge to the choice-of-law clause is an attack on the Promissory Note as a whole, not the Arbitration Agreement specifically.  That type of challenge is prohibited by *Buckeye*.

**(ii)      The Court Can Sever the Choice-of-Law Clause.**

As explained above, *Buckeye* precludes consideration of Plaintiff's argument that the Utah choice-of-law clause renders the Arbitration Agreements unconscionable.  In any event, even if the Court considers this challenge, it should be rejected for an additional reason: that provision can be severed without impacting the rest of the Arbitration Agreement.

Under Texas law, "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 230 (Tex. 2014) (citation omitted).  The essential purpose of an agreement turns on "whether or not parties would have entered into the agreement absent the unenforceable provisions." *Id.* (citation omitted).  The essential purpose of the Arbitration Agreement is to settle any and all disputes arising out of Plaintiff's loan agreement in arbitration rather than in court.  Eliminating the Utah choice-of law clause—which is not even part of the Arbitration Agreement—would in no way impair this purpose. *See Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) (severing unlawful damages provision to "expand the scope of arbitration rather than reduce or impair it, thereby freeing that provision to fulfill its intended function" of resolving disputes in an arbitral forum).  The arbitrator would simply apply straightforward choice-of-law principles to determine applicable state law. *Supra* § IV.C.1.b.i.

Courts readily sever non-essential provisions while leaving the rest of the broader contract intact, particularly where, as here, the contract contains a severability clause. *See* Doc. 1-2, ¶ 17 (the Promissory Note provides that "[i]f any provision of this Note is held unenforceable, the

14

remainder of this Note will remain in full force and effect, except as provided otherwise in the Arbitration Clause," and no provision in the Arbitration Agreement "otherwise" impacts the severability analysis of the choice-of-law clause); *Dreibrodt v. McClinton Energy Group, LLC*, 16–CV–00340–RAJ, 2017 WL 7805761, *4-5 (W.D. Tex. Jan. 3, 2017) (severing unenforceable fee-splitting clause because severability clause demonstrated "that the [p]arties intended the Arbitration Agreement to remain valid when, as here, a non-integral part of the agreement is unenforceable"); *Parrott v. D.C.G., Inc.*, No. 3:19-CV-1718-N, 2020 WL 1876096, at *4 (N.D. Tex. Apr. 14, 2020) (concluding that primary objective of an arbitration agreement to avoid litigation would not be frustrated by severing illegal attorneys' fees provision).

Indeed, courts across the country routinely sever choice-of-law clauses and enforce the remainder of an arbitration agreement. *See e.g.*, *Casement v. Soliant Health, Inc.,* No. 1:19-cv-01262-DAD-JLT, 2020 WL 2062173, at *8-9. (E.D. Cal. Apr. 29, 2020) (severing choice-of-law clause and compelling arbitration); *Tovar v. GC Servs. Ltd. P'ship*, No. 3:21-CV-1597-CAB-BGS, 2021 WL 5989944, at *6 (S.D. Cal. Dec. 17, 2021) (severing choice-of-law clause and compelling arbitration where the agreement was not "permeated by unconscionability" and the agreement "also contain[ed] a severance clause" substantively identical to the one in Plaintiff's agreement); *Salinas v. Carnival Corp.*, 785 F. Supp. 2d 1338, 1341 (S.D. Fla. 2011) (severing choice-of-law clause in contract from arbitration agreement); *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 334 (S.D.N.Y. 2010) (same).

Accordingly, if this Court concludes the choice-of-law clause is unconscionable, it should sever the clause and enforce the remainder of the Arbitration Agreement.

        **(iii)**    **There Is Nothing Substantively Unconscionable About Enforcing Agreements as Written.**

Plaintiff's next substantive unconscionability argument is that the Arbitration Agreement's

requirement that the Arbitrator "must enforce your agreements with us, as they are written," Doc. 1-2, ¶ 21 (p. 5), means that the arbitrator would have "no choice" but to enter judgment in favor of OppFi.  Doc. 1, ¶ 81.  To call that argument a stretch would be generous.  The requirement that an arbiter must apply the plain text of the Promissory Note is merely a statement of black letter law for courts and arbitrators alike.  *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (explaining that "arbitration is a matter of contract" and that courts must "rigorously enforce" arbitration agreements according to their terms); *Stolt-Nielsen*, 559 U.S. 662, 672 ("[T]he task of an arbitrator is to interpret and enforce a contract.").  Indeed, under Texas law,  "[i]f a contract is unambiguous," a court must "apply its plain meaning and **enforce it as written**."  *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012) (emphasis added).  This is particularly true for arbitration agreements, which "[c]ourts cannot extend . . . beyond the expressed intentions of the parties."  *Passmore v. SSC Kerrville Hilltop Vill. Operating Co. LLC*, No. SA-18-CV-00782-FB, 2019 WL 112790, at *6 (W.D. Tex. Jan. 4, 2019).  There is nothing substantively unconscionable about advising a consumer of this rule.  Nor is it against public policy for a contract term to reiterate Texas contract law.

Moreover, the clause does not compel the arbitrator to enter judgment in OppFi's favor as Plaintiff asserts.  Indeed, the clause is not even in the section of the Promissory Note describing "What law applies."  Instead, in an attempt to manufacture a basis to avoid arbitration, Plaintiff plucked the phrase from the section of the Arbitration Agreement describing "Who manages arbitrations."  Doc. 1-2, ¶ 21 (p. 5).  In this context, the appropriate interpretation is plain: like courts, arbitrators manage the arbitration by enforcing agreements as written.  There is nothing offensive, let alone unconscionable, about this language, which affirms a general rule of contract interpretation that applies equally in court and in arbitration.

16

**(iv)      Plaintiff's Preclusion-Based Substantive
Unconscionability Argument Fails.**

Plaintiff's next challenge is to the provision in the Arbitration Agreement providing that
"[n]o arbitration award under this Agreement will affect any dispute involving any other party,"
and that "[n]o arbitration award under another party's agreement will affect any arbitration under
this Agreement."   Doc. 1, ¶ 82.   According to Plaintiff, this provision renders the Arbitration
Agreement "unlawful and void because it violates fundamental principles of res judicata, collateral
estoppel, and issue preclusion."   *Id.*   That is, she claims that this clause effectively prevents an
arbitrator from applying preclusion principles based on other arbitration awards. *Id.* ¶ 95.  But for
several reasons, Plaintiff cannot establish unconscionability even if this clause operates precisely
how Plaintiff claims it would.

First, there is nothing "unlawful" about the Arbitration Agreement simply because it
stipulates that an arbitration award will not have preclusive effect in another dispute.  To the
contrary, "it is settled that the parties to an arbitration may choose to limit the arbitration award's
preclusive effect."  *Fox v. GEICO Gen. Ins. Co.*, No. 13-CV-6436 (MKB) (VVP), 2015 WL
5350243, at *3 (E.D.N.Y. Aug. 21, 2015), *report and recommendation adopted*, No. 13-CV-6436
(MKB) (VVP), 2015 WL 5334413 (E.D.N.Y. Sept. 14, 2015); Restatement (Second) of Judgments
§ 84 cmt. 4 (1982) ("If the terms of an agreement to arbitrate limit the binding effect of the award
in another adjudication or arbitration proceeding, the extent to which the award has conclusive
effect is determined in accordance with that limitation.").  That is the case because "[t]he
preclusive effect of the award is as much a creature of the arbitration contract as any other aspect
of the legal-dispute machinery established by such a contract."  *IDS Life Ins. Co. v. Royal All.
Assocs., Inc.*, 266 F.3d 645, 651 (7th Cir. 2001); *Miller v. Runyon*, 77 F.3d 189, 194 (7th Cir. 1996)
(explaining that "[g]iven the contractual nature of arbitration, it can be argued that the preclusive

effect of either a judicial judgment or an arbitration award on a subsequent arbitration should depend on what the parties agreed to"). The Fifth Circuit has reiterated this principle and held, as a result, that res judicata cannot apply to claims that were outside the scope of an arbitration agreement. *Murchison Cap. Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 624 (5th Cir. 2015) (explaining that "'the parties are under no obligation to submit themselves to arbitration with broader effects than may be agreed upon'") (quoting Restatement (Second) of Judgments § 84, cmt. H (1982)). Because an arbitration agreement may agree in advance to limit the preclusive effect of any arbitral award, Plaintiff's argument fails.

Moreover, this agreement is also consistent with the public policy embodied in the FAA. As the Supreme Court explained in *Epic Systems Corp. v. Lewis*, the FAA "protect[s] . . . absolutely" agreements calling for "one-on-one arbitration" using "individualized proceedings" given the "traditionally individualized and informal nature of arbitration." *Epic Systems Corp. v. Lewis,* 138 S. Ct. 1612, 1619-23 (2018) (citing *Concepcion*, 563 U.S. at 347, 348). An agreement ensuring that all disputes in arbitration are bilateral and heard on their own merits is consistent with the "traditionally individualized and informal nature of arbitration." *Id* at 1623.

Second, Plaintiff does not explain how the agreement on preclusive effect is unconscionable where the clause has mutual effect, Plaintiff had the ability to opt out, and it does not prevent Plaintiff from pursuing her claims. Straining to identify a harm, Plaintiff asks this Court to "imagine" a hypothetical scenario in which some other party prevails against OppFi, but she cannot take advantage of it. Doc. 1, ¶ 83. But courts reject attempts to invalidate an arbitration agreement based on hypothetical concerns. *See, e.g.*, *Hodges v. Comcast Cable Communications*, LLC, 21 F.4th 535, 541 (9th Cir. 2021) (courts should not "stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute."); *U.S. ex rel. Cassaday*

*v. KBR, Inc.*, 590 F. Supp. 2d 850, 860 (S.D. Tex. 2008) (declining to consider argument based on "hypothetical situation"); *Xome Holdings LLC v. Derbonne*, No. 4:16-CV-00550-ALM, 2017 WL 2402578, at *3 (E.D. Tex. June 2, 2017) (rejecting unconscionability challenge because it required the court to impermissibly "speculate" about the costs of arbitration). Here, because Plaintiff admits that her concern about nonmutual collateral estoppel requires the court to "imagine" a hypothetical issue "not actually presented in the parties dispute," it cannot be a basis to invalidate the Arbitration Agreement.

Third, even if the Court finds the clause unenforceable, the Court should sever it. As established above, an invalid provision should be severed, and arbitration compelled, where, as here, severing the clause would not impact the remainder of the arbitration agreement.

## 2.     The Arbitration Agreement Does Not Waive Federal Rights.

Plaintiff's second challenge to the Arbitration Agreement is her argument that the Arbitration Agreement is void "by prospectively waiving [Plaintiff's] right to bring a RICO claim." Doc. 1, ¶ 86. Plaintiff's theory appears to be that by selecting Utah law in the choice-of-law clause, the parties excluded the operation of federal law. Plaintiff is wrong on several levels.

To start, the challenged choice-of-law clause—which again, is not limited to the Arbitration Agreement alone but applies to the Promissory Note broadly—provides that "[t]his note is governed by federal law and the laws of the State of Utah." Doc. 1-2, ¶ 17 (p. 3). The fact that "federal law" "govern[s]" the Promissory Note alone defeats Plaintiff's suggestion that federal statutory claims are somehow waived. Moreover, the law is clear that selecting the law of another state does not waive federal law. *World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 521 (4th Cir. 2015) (a choice-of-law clause selecting Florida law necessarily includes federal law); *Atkinson v. General Elec. Credit Corp.,* 866 F.2d 396, 398–99 (11th Cir.

1989) (concluding that "Georgia law includes federal law" where there was a Georgia choice-of-law provision). That is because the laws of any state necessarily include federal law. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982) ("[A] fundamental principle in our system…mandates that the Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution.").

To the extent Plaintiff's argument is that the agreement requires the arbiter to simply enforce the Promissory Note and refuse to consider Texas arguments, such that she may not be able to prove her RICO claim, that is not a waiver—it is simply a complaint that her claim may be less likely to succeed if the arbitrator enforces the choice-of-law clause. That is not a valid basis to avoid arbitration nor is it a prospective waiver of Plaintiff's right to bring a RICO claim.

### D.      This Action Should be Dismissed, or Alternatively, Stayed.

As established above, *all* of Plaintiff's underlying claims are arbitrable. For that reason, the appropriate remedy here is dismissal of Plaintiff's claims. *See Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) (explaining that "dismissal is appropriate 'when *all* of the issues raised in the district court must be submitted to arbitration'" (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992))); *Direct Biologics, LLC v. McQueen*, No. 1:22-CV-381-SH, 2022 WL 1693995, at *9 (W.D. Tex. May 26, 2022) (applying *Alford*). Alternatively, the Court should stay proceedings pending completion of arbitration. "Section 3 provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete." *Alford*, 975 F.2d at 1164 (citing 9 U.S.C. § 3).

## V.      <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should compel arbitration. In addition, this Court should dismiss, or in the alternative, stay—this case.

Dated: June 27, 2022                    Respectfully submitted,

                                        */s/* Douglas D. Dodds
                                        Douglas D. Dodds (SBN 05932020)
                                        April E. Lucas (SBN 24046323)
                                        **McGinnis Lochridge LLP**
                                        1111 West 6th Street
                                        Bldg. B, Ste 400
                                        Austin, Texas 78703
                                        (512) 495-6000
                                        (512) 495-6093 Fax
                                        ddodds@mcginnislaw.com
                                        alucas@mcginnislaw.com

                                        Fredrick S. Levin (Pro Hac Vice)
                                        Ali M. Abugheida (Pro Hac Vice)
                                        **BUCKLEY LLP**
                                        100 Wilshire Boulevard, Suite 1000
                                        Santa Monica, California 90401
                                        Tel: (310) 424-3900
                                        Fax: (310) 424-3960
                                        flevin@buckleyfirm.com
                                        aabugheida@buckleyfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of June, 2022, I have served the forgoing document

via the CM/ECF system which will send notification of such filing to the following:

Dan Terzian
Warren Terzian LLP
222 N Pacific Coast Highway, Suite 2000
Los Angeles, California 90245
Tel:  (213) 410-2620
Email:  Dan.Terzian@warrenterzian.com

John R. Davis
Slack Davis Sanger, LLP
6001 Bold Ruler Way, Suite 100
Austin, Texas 78746
Tel:  (512) 794-8686
Fax:  (512) 795-8787
Email:  JDavis@slackdavis.com

/s/ Douglas D. Dodds
Douglas D. Dodds

Douglas D. Dodds (SBN 05932020)
April E. Lucas (SBN 24046323)
**McGinnis Lochridge LLP**
1111 West 6th Street
Bldg. B, Ste 400
Austin, Texas 78703
(512) 495-6000
(512) 495-6093 Fax
ddodds@mcginnislaw.com
alucas@mcginnislaw.com

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), on June 27, 2022, counsel for Defendant Opportunity Financial, LLC ("OppFi") conferred with counsel for Plaintiff Kristen Michael in a good-faith attempt to resolve or narrow their area of disagreement. However, the parties were unable to reach an agreement to resolve OppFi's motion.

Dated: June 27, 2022

/s/ Douglas D. Dodds

Douglas D. Dodds (SBN 05932020)
April E. Lucas (SBN 24046323)
**McGinnis Lochridge LLP**
1111 West 6th Street
Bldg. B, Ste 400
Austin, Texas 78703
(512) 495-6000
(512) 495-6093 Fax
ddodds@mcginnislaw.com
alucas@mcginnislaw.com

Fredrick S. Levin (Pro Hac Vice)
Ali M. Abugheida (Pro Hac Vice)
**BUCKLEY LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel: (310) 424-3900
Fax: (310) 424-3960
flevin@buckleyfirm.com
aabugheida@buckleyfirm.com