IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
Austin Division

| | |
|---|---|
| **Kristen Michael**, an individual on behalf of herself and all persons similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>**Opportunity Financial, LLC**, a limited liability company,<br><br>       Defendant. | Case No. 1:22-cv-00529-LY<br><br>Hon. Lee Yeakel<br><br>**Plaintiff Kristen Michael's Opposition to Opportunity Financial's Motion to Compel Arbitration** |

# TABLE OF CONTENTS

I.   Introduction ............................................................................................................ 6

II.  Background ............................................................................................................ 7

   A.   Opportunity Financial illegally rents Utah banks to evade Texas usury law. ........ 7

   B.   The arbitration clause requires that courts resolve claims related to the clause's
        validity and binds the arbitrator into enforcing the usurious loan. ........................ 8

III. Argument ............................................................................................................... 9

   A.   This Court decides whether the arbitration clause is unenforceable ...................... 9

   B.   Texas law applies to the arbitration clause. ......................................................... 10

        1.   Applying Texas law is critical because Ms. Michael would not have
             claims under Utah law. ............................................................................ 11

   C.   The declaratory relief claim on the arbitration clause's invalidity cannot be
        arbitrated because the parties agreed that courts—not arbiters—will decide it.... 12

   D.   The arbitration clause is unenforceable under both federal and Texas law. ......... 12

        1.   The arbitration clause is unenforceable under federal law because it
             prospectively waives Ms. Michael's RICO claim. ..................................... 12

        2.   The arbitration clause is void under Texas law. ....................................... 17

   E.   Opportunity Financial's arbitration clause is an extreme attempt to bind arbitrators
        into upholding loans that courts would invalidate. ............................................... 19

   F.   *Buckeye* and *Prima Paint* do not change anything. ............................................. 21

   G.   The Court should not stay any claims. ................................................................. 25

IV.  Conclusion ........................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Alvarez v. Gryphon Holdco, LLC*, No. 18-cv-01298,
2019 WL 4478889 (W.D. Tex. Sept. 18, 2019)................................................................ 13

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) .............................................. 13

*Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019)........................ 25

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000)................................ 19

*Atkinson v. General Elec. Credit Corp.*, 866 F.2d 396 (11th Cir. 1989)................................... 16

*Bair Chase Prop. Co., LLC v. S & K Dev. Co.*, 260 S.W.3d 133 (Tex. App. 2008) ................... 20

*Bldg. & Loan Ass'n of Dakota v. Griffin*, 90 Tex. 480, 491, 39 S.W. 656 (1897) ...................... 10

*Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709 (5th Cir. 2017) .......................... 10

*Broussard v. FinWise Bank, Inc.*, No. 21-cv-01238,
2022 WL 2057488 (W.D. Tex. May 12, 2022) ................................................................ 24

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ........................................... 9, 21

*Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577 (6th Cir. 2021) ............................................. 15

*Colbert v. Ashland Const. Co.*, 176 Va. 500 (1940) ....................................................... 19

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*, No. 15-cv-7522,
2016 WL 4820635 (C.D. Cal. Aug. 31, 2016) ................................................................ 11

*Coronado v. D.N. W. Houston, Inc.*, No. 13-cv-2179,
2015 WL 5781375 (S.D. Tex. Sept. 30, 2015) ................................................................ 19

*D.C. v. Elevate Credit, Inc.*, No. 20-cv-1809, 2021 WL 2982143 (D.D.C. July 15, 2021).......... 11

*Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017)........................................... 13, 16

*Dreibrodt v. McClinton Energy Grp., LLC*, No.16-cv-00340,
2017 WL 7805761 (W.D. Tex. Jan. 3, 2017) ................................................................... 18

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)......................................... 9, 10, 12

*Gibb v. Haynes Invs., LLC*, 967 F.3d 332 (4th Cir. 2020) ............................................... 13

*Gibbs v. Sequoia Cap. Operation, LLC*, 996 F.3d 286 (4th Cir. 2020) ................................... 13

*Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244 (9th Cir. 1994)...................................... 13, 16

*Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) ................................................ 13

*Hayes v. Delbert Servs. Corp.*, 811 F.3d 666 (4th Cir. 2016)................................................. 16, 19

*Hengle v. Treppa* , 19 F.4th 324 (4th Cir. 2021) ......................................................... 13

*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999)......................................... 21

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004) ................. 19

*In re Poly-Am., L.P.*, 262 S.W.3d 337 (Tex. 2008) .............................................. 17, 18

*In re Weeks Marine, Inc.*, 242 S.W.3d 849 (Tex. App. 2007)................................... 17, 23

*Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017)........................... 12

*Kinney v. Int'l Bus. Machines Corp.*, 557 F. Supp. 3d 823 (W.D. Tex. 2021) (Yeakel, J.) ... 10, 22

*Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P.*,
   853 F.3d 804 (5th Cir. 2017) ........................................................... 24

*MacDonald v. CashCall, Inc.*, 883 F.3d 220 (3d Cir. 2018) ................................... 16

*Maravilla v. Gruma Corp.*, 783 F. App'x 392 (5th Cir. 2019)..................................... 24

*Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839 (W.D. Tex. 2016)....................... 17

*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022)............................................... 10

*Newtown v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712 (N.D. Cal. 2012)................... 22

*Noe v. City Nat'l Bank of W. Virginia*, 828 F. App'x 163 (4th Cir. 2020) ................... 25

*Parrott v. D.C.G., Inc.*, No. 3:19-CV-1718-N, 2020 WL 1876096 (N.D. Tex. Apr. 14, 2020)... 18

*Pinela v. Neiman Marcus Grp.*, 238 Cal. App. 4th 227 (2015) ................................... 20

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)....................... 21

*Purdie v. Ace Cash Express, Inc.*, No. 01-cv-1754,
   2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ......................................... 11

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ................................... 9, 21

*Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292 (Tex. App. 2008) ............. 18

*Simpson v. Synergenx Health Kingwood LLC*, No. 4:20-cv-1860,
   2021 WL 765410 (S.D. Tex. Feb. 25, 2021) ......................................... 22

*Solomon v. Am. Web Loan*, 375 F. Supp. 3d 638 (E.D. Va. 2019).............................. 19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)........................ 10, 15, 21

*Tura v. Med. Shoppe Int'l, Inc.*, No. 09-cv-7018, 2010 WL 11506428 (C.D. Cal. Mar. 3, 2010)23

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995) ............................... 14

*W.-S. Life Assurance Co. v. Kaleh*, 879 F.3d 653 (5th Cir. 2018) ................................................. 10

*Wainwright v. Melaleuca, Inc.*, No. 2:19-cv-02330,
  2020 WL 417546 (E.D. Cal. Jan. 27, 2020) ..................................................................... 20

*Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229 (3d Cir. 2020) ............................... 13

*World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*,
  783 F.3d 507 (4th Cir. 2015) ........................................................................................... 16

*Zorilla v. Uber Techs., Inc.*, No. 4:16-cv-615, 2017 WL 3278061 (S.D. Tex. Mar. 16, 2017).... 17

## Statutes

18 U.S.C. § 1961 ........................................................................................................................... 14

18 U.S.C. § 1962 ........................................................................................................................... 14

18 U.S.C. § 1964 ........................................................................................................................... 14

9 U.S.C. § 10 ................................................................................................................................. 21

9 U.S.C. § 2 ................................................................................................................................... 12

9 U.S.C. § 3 ................................................................................................................................... 25

Tex. Fin. Code § 302.001 ............................................................................................................... 7

Tex. Fin. Code § 342.201 ........................................................................................................ 7, 11

Tex. Fin. Code § 342.507 ............................................................................................................. 11

Tex. Fin. Code § 349.001 ............................................................................................................. 11

Tex. Fin. Code § 349.002 ....................................................................................................... 11, 20

Tex. Fin. Code § 349.003 ............................................................................................................. 11

Tex. Fin. Code § 349.403 ............................................................................................................. 11

Tex. Fin. Code § 349.501 ............................................................................................................. 11

Utah Code Ann. § 15-1-1 ............................................................................................................. 11

## Other Authorities

Order, *CFPB v. Main Street Personal Fin., Inc.*,
  Case No. 2020-BCFP-0003 (C.F.P.B. June 2, 2020), 2020 WL 8182134 ...................... 20

## I.    INTRODUCTION

160% APR. That's the interest rate on Opportunity Financial's loans. It's more than quadruple the legal rate in Texas.

Yet Opportunity Financial claims the rate is legal because the loans—on paper—name a bank as the lender. But in reality, Opportunity Financial is the true lender. It markets, originates, funds, services, and ultimately owns the loans.

The loans are an illegal rent-a-bank scheme. Opportunity Financial has effectively conceded this in a lawsuit brought by the District of Columbia. There, Opportunity Financial agreed to stop the scheme, comply with DC usury law, pay almost $2 million, and waive over $600,000 in past due interest.

Opportunity Financial tries to avoid that outcome here through its arbitration clause. But as drafted by Opportunity Financial, the clause is wholly unenforceable.

The clause mandates that the "Arbiter must enforce" the loan. Any arbitral "rules that conflict" with enforcing the loan "don't apply." This binds the arbitrator. She must find that the bank is the lender; she must apply the chosen state law of Utah (where 160% APR is legal); and she must enforce the loan and enter judgment for Opportunity Financial. The arbitration clause compels this.

It's also what makes the clause unenforceable. Arbitration clauses can't waive substantive rights. When they do, the entire clause is void. It's void under federal law as an improper prospective waiver of rights. And it's void under Texas law as unconscionable and in violation of Texas statutes and public policy.

One last thing. The complaint asserts a declaratory relief claim on the invalidity of the arbitration clause. In all events, that claim cannot be forced into arbitration. The arbitration

clause "DOES NOT" cover "claims related to the validity, enforceability, coverage or scope of this Clause. Those claims shall be determined by a court." So there is no agreement to arbitrate that claim, and it must remain here.

Accordingly, Opportunity Financial's motion should be denied.

## II.    BACKGROUND

### A.    Opportunity Financial illegally rents Utah banks to evade Texas usury law.

Texas law caps the interest rate on consumer loans. Generally, the interest rate can't exceed 10% APR. Tex. Fin. Code § 302.001(b). But if a lender obtains a license, it can charge up to 30%. *E.g.*, *id.* § 342.201(e).

Opportunity Financial's loans to Texans are always around 160% APR. Complaint, ECF No. 1 at ¶ 35; Ex. C at C2, C5; Ex. A at A2. It knows of Texas' interest rate cap; it just tries to skirt it through a rent-a-bank scheme. Complaint at ¶¶ 4–7, 11, 32–67. Under that scheme, Opportunity Financial crafts the loan contracts to identify the lender as supposedly a Utah state-chartered bank, such as FinWise Bank or First Electronic Bank. Complaint at ¶ 38; Ex. A at A2. The contracts also say that Utah law governs the loans. Ex. A at A4.

While the loans identify FinWise or First Electronic as the lender, the true lender is Opportunity Financial. Complaint at ¶¶ 42–67. It holds the predominant economic interest and bears the risk of loss. *Id.* at ¶¶ 39–44. For example:

- Shortly after issuing a loan, Opportunity Financial buys at least 95% of the loan from the Utah bank (Complaint at ¶¶ 39–41; Ex. D at D57);

- The Utah bank has no risk of loss because Opportunity Financial provides it a cash collateral account and letters of credit, all "intended to protect the Bank" from suffering a loss (Complaint at ¶¶ 42–43; Ex. E at E017, E115, E125); and

- Opportunity Financial's financial statements identify the loans under its "Total Net Originations," as well as discuss loan costs, loss reserves, and "funding capacity" (Complaint at ¶ 44; Ex. H at H03–4; Ex. I at I09–10).

Opportunity Financial is also the true lender because it performs all marketing, originating, underwriting, and servicing. Complaint at ¶¶ 45–67. For instance:

- The loans are called "OppLoans," which is Opportunity Financial's trademarked name that it "does business" under (Complaint at ¶¶ 48–49; Ex. K at K2; Ex. L at L213);

- The loans must be obtained through Opportunity Financial's website opploans.com and can't be obtained from the Utah banks (Complaint at ¶¶ 52–58; Ex. M at M4–5; Ex. N at N2; Ex. Q; Terzian Dec. at ¶ 10);

- Opportunity Financial performs all marketing (Complaint at ¶¶ 45–46, 49–50; Ex. L at L10, L116–17; Ex. H at H03);

- Opportunity Financial screens prospective borrowers based on its own proprietary lending criteria with little to no involvement by the Utah banks (Complaint at ¶ 61; Ex. L at L025, L089–90, L096, L117); and

- The prospective and actual borrowers interact with only Opportunity Financial, not FinWise or First Electronic (Complaint at ¶¶ 52–53, 65–66, 95; Michael Dec. at ¶¶ 8–9).

Opportunity Financial even recognizes that the loans may be invalid because it's the true lender. Ex. L at L033, L43–46. "***If loans facilitated through our platform for one or more bank partners were subject to successful challenge that the bank partner was not the 'true lender,' such loans may be unenforceable*** …." *Id.* at L045.

To that end, the District of Columbia sued Opportunity Financial over its loans on a true lender theory. *Id.* at L046. Opportunity Financial settled, agreeing to comply with DC's usury law, pay almost $2 million, and waive over $600,000 in past interest. Ex. O at ¶¶ 10–11, 13, 19.

## B.   The arbitration clause requires that courts resolve claims related to the clause's validity and binds the arbitrator into enforcing the usurious loan.

Ms. Johnson entered a loan contract with Opportunity Financial. Ex. A. The contract has an arbitration clause. *Id.* at A5–7. It reserves certain disputes for courts. For example, "it DOES NOT" cover claims "related to the validity, enforceability, coverage or scope of this Clause. Those claims shall be determined by a court." *Id.* at A5.

The clause also provides that the "Arbiter must enforce your agreements with us, as they are written" and that "[a]ny rules that conflict with this Clause don't apply …." *Id.* at A6. This was buried in a section on choosing AAA or JAMS for arbitration:

| Process. | | |
|---|---|---|
| What must a party do before starting a lawsuit or arbitration? | Send a written Claim notice and work to resolve the Claim | Before starting a lawsuit or arbitration, the complaining party ("Claimant") must give the other party (the "Responding Party") written notice of the Claim. The notice must explain in reasonable detail the nature of the Claim and any supporting facts. You or an attorney you have personally hired must sign the notice and must provide your full name and a phone number where you (or your attorney) can be reached. A collections letter from us to you will serve as our written notice of a Claim. Once a Claim notice is sent, the Claimant must give the Responding Party a reasonable opportunity over the next 30 days to resolve the Claim on an individual basis. |
| Who manages arbitrations? | AAA, JAMS, or an agreed Arbiter. | The Claimant selects the company to manage the arbitration - either the American Arbitration Association ("AAA") (1-800-778-7879), www.adr.org, or JAMS (1-800-352-5267), www.jamsadr.com. The parties may also agree in writing to a local attorney, retired judge or Arbiter in good standing with another arbitration group. The Arbiter must arbitrate under AAA or JAMS consumer rules. You may get a copy of these rules from such group. Any rules that conflict with this Clause don't apply. If these options aren't available, a court may choose the Arbiter. Such Arbiter must enforce your agreements with us, as they are written. |

*Id.* Outside the arbitration clause, the contract has a choice of law clause: "[t]his Note is governed by federal law and the laws of the State of Utah, except that the Arbitration Clause is governed by the Federal Arbitration Act …." *Id.* at A4.

## III.   ARGUMENT

### A.   This Court decides whether the arbitration clause is unenforceable.

This Court—not an arbitrator—decides whether the arbitration clause is unenforceable. Motions to compel arbitration entail at least two questions: (1) whether the arbitration clause is unenforceable and (2) who decides that. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942–43 (1995). In most cases, the arbitration clause has a delegation provision requiring that an arbitrator decide the arbitration clause's validity. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). In those cases, courts' review is limited. They can't reach the question of the arbitration clause's validity unless they first determine that the delegation provision itself is invalid. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

This case is different. The arbitration clause requires that courts decide whether it's enforceable. The clause "DOES NOT" cover "claims related to the validity, enforceability, coverage or scope of this Clause. Those claims shall be determined by a court." Ex. A at A5.

This language is binding. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). Thus, "the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *First Options of Chicago, Inc.*, 514 U.S. at 943; *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 714 (5th Cir. 2017); *Kinney v. Int'l Bus. Machines Corp.*, 557 F. Supp. 3d 823, 830–31 & n.6 (W.D. Tex. 2021) (Yeakel, J.).

That independent review "does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). Courts must "make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* So "[i]f an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.*

### B.     Texas law applies to the arbitration clause.

Federal courts apply the forum's choice of law rules. *W.-S. Life Assurance Co. v. Kaleh*, 879 F.3d 653, 658 (5th Cir. 2018). Texas courts will not enforce a contractual choice-of-law clause if "the chosen law would be 'contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue ….." *Id.*

When a foreign company lends money to Texans, Texas law applies—because "the practical effect [of applying another state's laws] would be to annul our statutes against usury, and to turn the citizens of our state over to the unrestrained exactions of all lenders who might choose to avail themselves of such a sham." *Bldg. & Loan Ass'n of Dakota v. Griffin*, 90 Tex. 480, 491 (1897). Indeed, Texas usury laws are so fundamental, that violating them is a criminal

misdemeanor. Tex. Fin. Code § 349.501. And lenders can't force Texans to "waive[] any right" they have under usury laws. *Id.* § 342.507.

Texas law applies here. These are usurious loans made to Texans in Texas. Ex. A at A2; Michael Dec. at ¶ 2, 5. And Opportunity Financial knew that because it collected Ms. Michael's Texas address in the application process. Ex. A at A2; Michael Dec. at ¶ 5. Opportunity Financial, an Illinois company, can't escape this by claiming Utah law applies. Complaint, ECF No. 1 at ¶ 14; Ex. O at ¶ 2.  Plus Opportunity Financial is a registered Texas lender. Ex. R; Terzian Dec. at ¶ 13.

### 1.      Applying Texas law is critical because Ms. Michael would not have claims under Utah law.

If Utah law applied, it would deprive Ms. Michael of all claims. Utah law does not cap interest rates. Utah Code Ann. § 15-1-1(2) (no max interest rate if the contract "expressly specif[ies]" the interest rate). So under Utah law, Opportunity Financial's loans would be valid.

But Texas law does cap interest rates. Tex. Fin. Code § 342.201. Loans that violate these provisions are void, and the borrowers can recover all payments and additional penalties. *Id.* §§ 342.001, 349.001(a), 349.002, 349.003(a), 349.403(e).

It doesn't matter that the loans name banks as the lenders. For one, Opportunity Financial is the true lender. *See, e.g.*, *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, No. 15-cv-7522, 2016 WL 4820635, at *6 (C.D. Cal. Aug. 31, 2016); *D.C. v. Elevate Credit, Inc.*, No. 20-cv-1809, 2021 WL 2982143, at *6–9 (D.D.C. July 15, 2021); *Purdie v. Ace Cash Express, Inc.*, No. 01-cv-1754, 2003 WL 22976611, at *1–2, 6 (N.D. Tex. Dec. 11, 2003) (approving class action settlement of true-lender usury claims); Complaint, ECF No. 1 at ¶¶ 38–67. And even if Opportunity Financial weren't the true lender, companies can't "use any device, subterfuge, or pretense to evade" Texas usury law. Tex. Fin. Code § 342.051(b).

**C.**     **The declaratory relief claim on the arbitration clause's invalidity cannot be arbitrated because the parties agreed that courts—not arbiters—will decide it.**

Compelling a dispute to arbitration requires "that the parties … agreed to submit [it] to arbitration." *First Options of Chicago, Inc.*, 514 U.S. at 943. The parties did not agree to arbitrate the complaint's declaratory relief claim on the invalidity of the arbitration clause.

That claim seeks, among other things, "a judicial declaration … that …. the loan contracts' arbitration clause" and various provisions in that clause are "unconscionable, void, and unenforceable …." Complaint, ECF No. 1 at ¶ 128. The arbitration clause states that it "DOES NOT" cover "claims related to the validity, enforceability, coverage or scope of this Clause. Those claims shall be determined by a court." Ex. A at A5.

So the declaratory relief claim on arbitration clause's validity should remain here. And this Court should decide it as it does all class claims: through discovery, class certification, and judgment.

**D.**     **The arbitration clause is unenforceable under both federal and Texas law.**

An arbitration clause is not enforceable if "grounds as exist at law or in equity for [its] revocation …." 9 U.S.C. § 2. So "[a] court may invalidate an arbitration agreement based on" any "generally applicable grounds …." *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426, 1428 (2017). The arbitration clause here is unenforceable on three generally applicable grounds. It's a prospective waiver under federal law, and it's both unconscionable and void under Texas law.

**1.**     **The arbitration clause is unenforceable under federal law because it prospectively waives Ms. Michael's RICO claim.**

The arbitration clause is unenforceable because it prospectively waives a federal right. Courts invalidate an arbitration clause that "prospective[ly] waive[s] … a party's *right to pursue*

statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 & n.14 (5th Cir. 2003); *Alvarez v. Gryphon Holdco, LLC*, No. 18-cv-01298, 2019 WL 4478889, at *6 (W.D. Tex. Sept. 18, 2019). For that reason, the arbitration clause cannot "restrict[] the arbitrator's power … [to] award … exemplary and punitive damages …." *Hadnot*, 344 F.3d at 478 & n.14; *Alvarez*, 2019 WL 4478889, at *6.

The Fifth Circuit tracks the law elsewhere. Waiving any "statutory cause of action" or right is an invalid prospective waiver. *Gibb v. Haynes Invs., LLC*, 967 F.3d 332, 340 (4th Cir. 2020); *Hengle v. Treppa* , 19 F.4th 324, 334–45 (4th Cir. 2021); *Gibbs v. Sequoia Cap. Operation, LLC*, 996 F.3d 286, 292 (4th Cir. 2020); *see also Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1246–48 (9th Cir. 1994). So even if the arbitration clause doesn't bar the arbiter from applying some federal laws—such as the FAA and federal consumer protection laws—there still is a prospective waiver when it bars RICO claims. *Gibbs v. Haynes Invs.*, 967 F.3d at 343–44; *Hengle*, 19 F.4th at 340–44 (finding prospective waiver of the plaintiff's RICO claims even though "the arbitration provision explicitly refers to the FAA").

The prospective waiver need not be explicit. Courts find prospective waiver when the arbitration clause "implicitly accomplishes" it through a choice of law clause or any other "provisions that disallow" the application of any federal law. *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 335–36 (4th Cir. 2017); *Hengle*, 19 F.4th at 337, 339; *see also Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 241 (3d Cir. 2020); *Gibbs v. Sequoia Cap. Operations*, 966 F.3d at 293; *Gibbs v. Haynes Invs.*, 967 F.3d at 342.

The Supreme Court has said the same. A choice-of-law clause could operate "as a prospective waiver of a party's right to pursue statutory remedies …." *Vimar Seguros y*

*Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995). And if it does, the Supreme Court "would have little hesitation in condemning the agreement as against public policy." *Id.*

The arbitration clause here prospectively waives Ms. Michael's RICO claims. Complaint at ¶¶ 129–61 (asserting two RICO claims). Under the clause, the "Arbiter *must enforce* your agreements with us, as they are written." Ex. A at A6 (emphasis added). This is mandatory. "Any rules that conflict with this Clause don't apply." *Id.*

The arbitration clause also mandates that "[t]he Arbiter apply … substantive law consistent with the FAA." *Id.* at A5. One of the agreements (the loan contract) requires applying the substantive law of Utah. *Id.* at A4. So the arbiter "must enforce" that agreement—it must apply it as written and enforce the loan contract as valid under Utah law.

The arbitration clause's waiver of Ms. Michael's RICO claim is implicit. RICO is violated whenever an enterprise engages in the collection of an "unlawful debt." 18 U.S.C. § 1962(c). In turn, an "unlawful debt" is a debt that "is unenforceable under State … law … because of the laws relating to the usury …." 18 U.S.C. § 1961(6).

If the arbiter could apply Texas state law, Ms. Michael would have a RICO claim because Texas law bars interest rates over 30% APR. *Supra* Sections III.B & III.B.1 (beginning page 10). But the arbitration clause prevents the arbiter from applying Texas law; he must apply Utah law.

When forced to apply Utah state law, the debt is enforceable. Utah doesn't limit interest rates. *Supra* Section III.B.1 (beginning page 11). So there would be no RICO violation. Because the arbitration clause dictates that the arbiter "must enforce" all provisions in all agreements, the clause prospectively waives her RICO claim. That is her strongest claim, as it's the only one with mandatory treble damages. 18 U.S.C. § 1964(c).

The oppressive effect of these provisions cannot be overstated. Arbitrators aren't like judges. Under the FAA, "private agreements to arbitrate are enforced *according to their terms*." *Stolt-Nielsen S.A.*, 559 U.S. at 664, 682–83 (emphasis added). Unlike a judge, "an arbitrator derives his or her powers" *only* from the arbitration clause. *Id.* at 682–83. And unlike a judge, an arbitrator "has no general charter to administer justice"; she must enforce the arbitration agreement as it was "created by … the parties …." *Id.* at 683. Here that means she "must enforce" the loan contract.

*Stolt-Nielsen* makes this clear. The arbitrator there disregarded the arbitration clause and instead acted "as if it had the authority of a common-law court to develop what it viewed as the best rule …." *Id.* at 673–75. The arbitrator's doing that was so improper that the Supreme Court vacated it. *Id.* at 684–87. "[A]rbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Id.* at 682, 684. "If 'an arbitrator's authority derives solely from the contract,' *McDonald v. City of West Branch*, 466 U.S. 284, 290 (1984), then an AAA administrator's authority is likewise limited. In other words, an administrator can't 'override the parties' express agreement in favor of general procedural rules.'" *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 586 (6th Cir. 2021) (part of *McDonald* citation omitted).

Opportunity Financial chose this language for the arbitration clause. It can't now escape it. Usurious lenders like Opportunity Financial have asked courts not to read arbitration clauses literally, promising "that they will *not* take the position in an arbitration that the borrowers ... may not pursue their remedies for their claims under federal and [forum] law …." *E.g.*, *Gibbs v. Sequoia Cap. Operations*, 966 F.3d at 293 n.4 (internal brackets omitted). Courts have rejected these arguments. *Id.* The usurious lenders drafted the arbitration clauses to prospectively waive federal rights. *See id.* Now they must live with the clause being void in entirety. *See id.*

### a.    The clause is wholly unenforceable; nothing can be severed.

When usurious lenders use arbitration clauses to prospectively waive a federal right,

courts have repeatedly held that the entire arbitration clause is unenforceable. *Hengle*, 19 F.4th

at 344; *Dillon*, 856 F.3d at 336–37; *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir.

2016); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 230–32 (3d Cir. 2018); *see also Graham

Oil Co.*, 43 F.3d at 1248–49. The offending provisions "cannot be severed because they go to

the essence of the agreement to arbitrate." *Hengle*, 19 F.4th at 344 (internal quotation marks and

brackets omitted). Indeed, severance is not appropriate "when a party uses its superior

bargaining power to extract a promise that offends public policy …." *Dillon*, 856 F.3d at 336–

37; *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 676 (4th Cir. 2016) ("[S]everance should not

be used when an agreement represents an 'integrated scheme to contravene public policy.'").

For these reasons, the Court should not sever anything and deny the motion in entirety.

### b.    Opportunity Financial's cases don't apply.

Opportunity Financial contends that "the law is clear that selecting the law of another

state does not waive federal law." Motion at 19–20. But its cited cases don't apply. They just

say that a chosen state's law "must be deemed to include United States law." *World Fuel Servs.

Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 521 (4th Cir. 2015); *Atkinson v.

General Elec. Credit Corp.*, 866 F.2d 396, 398–99 (11th Cir. 1989).

That is not our situation. Here, the rights under federal law—RICO—hinge on what *state*

law governs. The arbitration clause mandates Utah law and bars the arbitrator from choosing

otherwise. With the arbitrator forced to use Utah law for adjudicating the RICO claim, the

arbitration clause prevents Ms. Michael from pursuing that claim.

### 2.   The arbitration clause is void under Texas law.

A second ground for voiding the arbitration clause is Texas public policy, and a third

ground is substantive unconscionability.

Under Texas law, arbitration clauses can be "void[] under public policy" just like "any

other contract …." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). If an arbitration

clause "waive[s] the substantive rights and remedies" provided by a statute, it renders the clause

void—and potentially makes the whole "dispute un-arbitrable." *Id.* at 349.

Similarly, "[u]nconscionable contracts[—] … whether relating to arbitration or not—are

unenforceable under Texas law." *Id.* "There are two types of unconscionability: procedural

(fairness of the circumstances surrounding adoption of the arbitration provision) and substantive

(fairness of the arbitration provision itself)." *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 859

(Tex. App. 2007). "[A] party need not establish both substantive and procedural

unconscionability"; establishing "*either* substantive[] or procedural[] unconscionab[ility]" will

void a contract. *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 847 (W.D. Tex. 2016);

*Zorilla v. Uber Techs., Inc.*, No. 4:16-cv-615, 2017 WL 3278061, at *6 (S.D. Tex. Mar. 16,

2017); *In re Weeks Marine, Inc.*, 242 S.W.3d at 859.

 "The test for substantive unconscionability is whether, 'given the parties' general

commercial background and the commercial needs of the particular trade or case, the clause

involved is so one-sided that it is unconscionable under the circumstances existing when the

parties made the contract.'" *In re Weeks Marine, Inc.*, 242 S.W.3d at 859; *In re Poly-Am., L.P.*,

262 S.W3d at 348. Substantive unconscionability exists when a contract waives a statute's

"substantive remedies," so that waiver "will be unenforceable even" when it's in an arbitration

clause. *In re Poly-Am., L.P.*, 262 S.W.3d 349, 352–53.

Substantive unconscionability also exists when a contractual provision "is against public policy," "is illegal[,] or is inconsistent with the public's best interest. Expressions of public policy are found in the constitution and statutes, as well as the common law."" *Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 297 (Tex. App. 2008). So if a consumer statute grants consumers the right to recover legal fees and an arbitration clause waives that statutory right (by requiring that the parties bear their own fees), that waiver is substantively unconscionable and void. *Id.* at 299–300.

The arbitration clause here is both substantively unconscionable and void under public policy. As already explained, the clause directs that the "Arbiter must enforce" the loan agreements. This removes Ms. Michael's ability to hold Opportunity Financial liable because it gives the arbiter no choice but to declare the loans valid. That violates public policy and is unconscionable. An arbitration clause cannot lawfully convert statutorily-void, usurious loans into valid loans before the arbiter.

> ### a.    The clause is wholly unenforceable; nothing can be severed.

Opportunity Financial contends that any offending provisions should be severed under Texas law. But they shouldn't be.

Severing unlawful provisions from an arbitration clause and enforcing the remainder requires two things: (1) the parties intended to allow severance (which is found by a severability clause) and (2) the severed provisions do "not constitute the essential purpose of the agreement …." *In re Poly-Am., L.P.*, 262 S.W.3d at 360; *Dreibrodt v. McClinton Energy Grp., LLC*, No.16-cv-00340, 2017 WL 7805761, at *4–5 (W.D. Tex. Jan. 3, 2017) (severance allowed because the arbitration agreement had a severability clause); *Parrott v. D.C.G., Inc.*, No. 3:19-CV-1718-N, 2020 WL 1876096, at *3–4 (N.D. Tex. Apr. 14, 2020) (same). Courts have refused

to sever unconscionable provisions when there is no severability clause. *E.g.*, *Coronado v. D.N. W. Houston, Inc.*, No. 13-cv-2179, 2015 WL 5781375, at *11 (S.D. Tex. Sept. 30, 2015) ("refus[ing] to sever unconscionable provisions" because the arbitration agreements did not have severability clauses).

Neither requirement is met. First, the parties didn't intend to allow severance. The arbitration clause doesn't have a severance clause. True, the loan contract's choice of law provision has one. But Opportunity Financial argues that provision doesn't apply to the arbitration clause and can't be considered.

Second, the essential purpose of the arbitration clause is violating usury law. As already explained under federal law, this was an underhanded effort to bind the arbitrator into enforcing these loans when a court wouldn't. "[S]everance should not be used when an agreement represents an 'integrated scheme to contravene public policy." *Hayes*, 811 F.3d at 676; *see supra* Section III.D.1.a (beginning page 16); *see also Solomon v. Am. Web Loan*, 375 F. Supp. 3d 638, 669–72 (E.D. Va. 2019); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 124 & n.13 (2000) (severance not appropriate if it would "condon[e] an illegal scheme");[1] *Colbert v. Ashland Const. Co.,* 176 Va. 500, 509 (1940) ("When the law prohibits a thing, it is unlawful to do it, and the courts should not lend their aid to the enforcement of prohibited contracts.").

### E.   Opportunity Financial's arbitration clause is an extreme attempt to bind arbitrators into upholding loans that courts would invalidate.

Opportunity Financial claims that Ms. Michael misreads the arbitration clause. In its view, the clause doesn't stop an arbiter from conducting a choice-of-law analysis. Motion at 13.

---

[1] The Fifth Circuit has previously relied on *Armendariz*'s severance analysis. *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 171 (5th Cir. 2004).

But one of its cases directly rejects that. Consider *Wainright*. That case starts by analyzing a case named *Pinela. Wainwright v. Melaleuca, Inc.*, No. 2:19-cv-02330, 2020 WL 417546, at *6 (E.D. Cal. Jan. 27, 2020), *aff'd*, 844 F. App'x 958 (9th Cir. 2021). *Pinela* invalidated an arbitration clause as unconscionable because it (1) required that the arbitrator enforce the contract as written, (2) required applying a foreign forum's law, and (3) the plaintiff's claims were invalid in the foreign forum (but valid in forum). *Pinela v. Neiman Marcus Grp.*, 238 Cal. App. 4th 227, 243–52 (2015). *Wainwright* distinguished *Pinela* because— unlike *Pinela*—"nothing in the parties' agreement restricts the arbitrator from considering the enforceability of this choice-of-law provision …." *Wainwright*, 2020 WL 417546, at *6 (internal brackets omitted). The arbitration clause here is like *Pinela*'s, not *Wainright*'s.

Opportunity Financial also claims that the language "must enforce your agreements with us" is standard and correctly explains the arbitrator's duties. Not true.

For one, almost no arbitration clause contains language like Opportunity Financial's. A Westlaw search of case decisions didn't reveal one hit for the clause. And a search of regulatory proceedings revealed just one hit for a similar one: a consent order in a CFPB action against a lender that violated several consumer financial laws. Consent Order, *CFPB v. Main St. Pers. Fin., Inc.*, Case No. 2020-BCFP-0003 (C.F.P.B. June 2, 2020), 2020 WL 8182134 ("Such Arbiter must enforce my agreements with us, as they are written.").

For another, courts have a duty to *not* enforce Opportunity Financial's loan contracts because "all usurious contracts [are] illegal and void …." *See Bair Chase Prop. Co., LLC v. S & K Dev. Co.*, 260 S.W.3d 133, 139 (Tex. App. 2008); Tex. Fin. Code § 349.002. Yet Opportunity Financial tries to contract around that duty by sending the dispute to arbitration and mandating that the "Arbiter must enforce" all "agreements."

20

To be sure, the motion's cases are generally right. Usually it is courts and arbiters' duty to enforce contracts. But those are ordinary cases, where the contracts were lawful.

This is no ordinary case. We have an illegal contract, and the arbitration clause mandates that the arbiter enforce it as written—no exceptions. Arbiters can't exceed the powers granted them in the arbitration clause. 9 U.S.C. § 10(a)(4); *Stolt-Nielsen S.A.*, 559 U.S. at 671–72, 675–77. So with a clause mandating that the arbiter enforce the agreement under Utah law, she has no choice but to uphold the illegal loan. And this makes the arbitration clause void.

In short, Opportunity Financial drafted this agreement. It chose to bury this language in a section on choosing AAA or JAMS for arbitration. It chose to bury, in that same section, language removing the arbiter's ability to invoke "[a]ny rules that conflict with the Clause …." If Opportunity Financial wanted to arbitrate, it should have drafted a fair arbitration agreement.

### F.    *Buckeye* and *Prima Paint* do not change anything.

*Buckeye* and *Prima Paint* don't stop the Court from considering any argument in this opposition. *Buckeye* just says that a state law declaring a type of contract void doesn't necessarily void the arbitration clause. *Buckeye Check Cashing, Inc.*, 546 U.S. at 445–47. But that same challenge targeted at the arbitration clause can void it. *Id.* at 444. *Prima Paint* says the same thing. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).

"[F]ederal court[s] must consider" challenges to "the precise agreement to arbitrate …." *Rent-a-Center, W., Inc.*, 561 U.S. at 72. This includes challenges that may extend to the larger contract, so long as the challenge "*as applied*" to the arbitration agreement "render[s] *that provision*" unenforceable. *See id.* at 74.

A directly on point Southern District case reaches the same conclusion. That case involves an arbitration clause in an employment contract. *Simpson v. Synergenx Health*

21

*Kingwood LLC*, No. 4:20-cv-1860, 2021 WL 765410, at *1 (S.D. Tex. Feb. 25, 2021). That

clause had two relevant provisions: (1) a delegation provision clearly requiring that the arbiter

decide issues of the clause's validity and (2) a modification provision that allowed the employer

to unilaterally modify the arbitration clause. *Id.* at *1–3. *Simpson* held that both the delegation

provision and the arbitration clause were void for the same reason: the modification provision

made all of it illusory and invalid. *Id.* at *3–5.

      *Simpson* found *Rent-a-Center* controlling. *Id.* at *3–4 & n.2. It didn't matter that the

modification provision applied to the entire arbitration clause and ultimately invalidated that

clause. *Id.* at *5. What mattered was that the plaintiff permissibly attacked the delegation

provision by arguing that the modification provision "as applied" to the delegation provision

made it invalid. *Id.* at *3–4.

      *Simpson* is no outlier. This Court held the same thing in *Kinney*. *Kinney*, 557 F. Supp. 3d

at 830–831 & n.6 ("[W]here the plaintiffs specifically plead that fraudulent inducement of the

arbitration provision in conjunction with broader fraud claims, the court decides whether the

arbitration clause stands."). It's also consistent with other circuits, which "have construed *Rent-*

*A-Center* to hold that, '[i]n specifically challenging a delegation clause, a party may rely on the

same arguments that it employs to contest the enforceability of other arbitration agreement

provisions." *Simpson*, 2021 WL 765410, at *3 n.2; *see also Hengle*, 19 F.4th at 335–36;

*MacDonald*, 883 F.3d at 226–27; *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 828, 836 (9th Cir.

2021). Thus, courts can look to provisions outside the arbitration clause when the clause

"clearly contemplates … that these clauses would apply to arbitration." *Newtown v. Am. Debt*

*Servs., Inc.*, 854 F. Supp. 2d 712, 726 (N.D. Cal. 2012), *aff'd*, 549 Fed. App'x 692, 693 (9th Cir.

2013); *see also Tura v. Med. Shoppe Int'l, Inc.*, No. 09-cv-7018, 2010 WL 11506428, at *5

(C.D. Cal. Mar. 3, 2010) ("focus[ing] solely on the applicability of the choice-of-law provision to the arbitration provision, not to the agreement as a whole").

As for Texas courts, they read *Prima Paint* to not apply when the arbitration clause requires that courts decide arbitrability. *See In re Weeks Marine, Inc.*, 242 S.W.3d 849, 861–62 & n.14 (Tex. App. 2007). Take *In re Weeks*. It had an arbitration clause requiring arbitration of all claims arising out of employment injuries. *Id.* at 862. The plaintiff opposed a motion to compel arbitration due to procedural unconscionability. *Id.* And the employer argued that, under *Prima Paint*, that was a challenge to the entire contract and for the arbitrator. *Id.* at 861–62.

The Court of Appeals rejected that. *Id.* at 861–62 & n.14. It was an "attack … directed at the agreement to arbitrate." *Id.* And "even if the procedural unconscionability claim were directed at the contract as a whole," "under *Prima Paint* and its progeny, … the issue is not one for the arbitrator because the arbitration provision does not cover that issue." *Id.* The arbitration clause applied to "claim[s]" arising out of employment injury. *Id.* This wasn't a claim; it was a defensive argument. *Id.*

The same goes here. Under the arbitration clause, all "claims related to the validity, enforceability, coverage, or scope" of that clause "shall be determined by a court." Ex. A at A5. And nothing in the arbitration clause purports to cover defensive arguments. *See id.* So even if the arguments in this opposition could be viewed as directed to the contract as the whole, they are issues for this Court to resolve because the arbitration clause does not cover them.

One of the cases cited by the motion, *Lefoldt*, reaches a conclusion similar to *In re Weeks*. Even though that plaintiff's challenge was directed to the whole contract and nothing in the arbitration clause, that challenge would be decided by a court if there is "evidence that the

contracting parties intended" the enforceability issue be decided by a court. *Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P.*, 853 F.3d 804, 817–18 (5th Cir. 2017).

Another case cited by the motion, *Maravilla*, doesn't apply. That case had a delegation provision requiring the arbiter decide all "matters relating to … enforceability" of the arbitration clause. *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 393 (5th Cir. 2019). We don't have a delegation provision. That matters. As *Maravilla* said, "[i]f the agreement contains a delegation clause, a 'motion to compel arbitration should be granted in almost all cases.'" *Id.* at 395. The plaintiff there did not "specifically challenge the delegation clause," so the court had to treat "the delegation clause as valid" and send the enforceability issues to the arbitrator. *Id.* at 397.

*Broussard* falls into the same camp as *Maravilla*. It had a delegation provision requiring that the arbitrator decide all issues related arbitration clause's enforceability. *Broussard v. FinWise Bank, Inc.*, No. 21-cv-01238, 2022 WL 2057488, at *3–4 (W.D. Tex. May 12, 2022). Plus the unrepresented plaintiff there didn't challenge any language in the arbitration clause. *See id.*

At bottom, we have an arbitration clause mandating that courts decide all issues related to the validity or enforceability of the arbitration clause. And Ms. Michael's challenge to the arbitration clause is anchored to language in that clause:

- The arbitration clause dictates that "Arbiter must enforce your agreements with us, as they are written" (Ex. A at A6);

- The arbitration clause dictates that "[a]ny rules that conflict with this Clause don't apply" (*id.*); and

- The arbitration clause dictates "[t]he Arbiter apply … substantive law consistent with the FAA" (*id.* at A5).

This language binds the arbitrator. Under *Stolt-Nielsen*, she can't disregard it. She "must enforce" the loan contract. So she has no choice but to find it valid under Utah law.

### G.   The Court should not stay any claims.

Ms. Michael agrees that if all claims are sent to arbitration, dismissal without prejudice is warranted. But if the declaratory relief claim remains in court, a stay is not appropriate.

A claim can be stayed only if that claim is "referable to arbitration pursuant to an agreement in writing for such arbitration …." 9 U.S.C. § 3. Recall that the declaratory relief claim "shall be determined by a court," not an arbitrator. Ex. A at A5. So it is not a claim that's "referable to arbitration" and thus cannot be stayed.

Opportunity Financial may contest this by pointing to an arbitration clause provision related to stays. But that governs only claims for public injunctive relief (a California remedy). *Id.* at A5. With those claims, "the parties will request that the court stay the Claim for a public injunction until the arbitration award regarding individual relief has been entered in court." *Id.* Ms. Michael has not sought a public injunction, so this stay provision doesn't apply.

At bottom, the arbitration clause does not apply to claims related to the clause's validity or enforceability, and it doesn't permit staying those claims until after arbitration. So the clause can't be rewritten to allow a stay. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 282–84 (5th Cir. 2019).

## IV.   CONCLUSION

The motion should be denied in entirety.

Dated: July 11, 2022

/s/
_____
John Davis (Texas Bar # 24099518)
jdavis@slackdavis.com
SLACK DAVIS SANGER LLP
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
(703) 910-5062

_____
Dan Terzian (admitted *pro hac vice*)
dan.terzian@warrenterzian.com
WARREN TERZIAN LLP
222 N. Pacific Coast Highway, Ste. 2000
Los Angeles, CA 90245
(213) 410-2620

*Counsel for Plaintiff Kristen Michael*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel for Defendant Opportunity Financial, LLC.


/s/ *John R. Davis*