## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **Kristen Michael,** an individual on behalf of herself and all persons similarly situated<br><br>Plaintiff<br><br>v.<br><br>**Opportunity Financial, LLC,** a limited liability company<br><br>Defendant | Civil Action No.: 1:22-cv-00529-LY<br><br>Judge Lee Yeakel |

## DEFENDANT OPPORTUNITY FINANCIAL, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY

I.  **INTRODUCTION**

In her Opposition to OppFi's Motion to Compel Arbitration ("Motion"),[1] Plaintiff concedes that she entered into the Arbitration Agreement that covers her claims in this case, and she abandons two defenses to enforcement of the Arbitration Agreement asserted in her Complaint, (i) that the arbitration agreement is procedurally unconscionable and (ii) that the arbitration agreement is unenforceable because it limits the use of an arbitration award in *other* actions. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (noting that the "failure to pursue [a] claim beyond [one's] complaint constitute[s] abandonment"). Nonetheless intent on avoiding the arbitral forum to which she agreed, Plaintiff throws several arguments at the wall, asserting the Arbitration Agreement is "unconscionable," "unenforceable," or "void" for a variety of reasons. These arguments fail. The Court should compel this case to arbitration.

II.  **ARGUMENT**

   A.  **Federal Law Governs the Arbitration Agreement.**

In its Motion, OppFi established that the Federal Arbitration Act ("FAA") applies to the Arbitration Agreement. Doc. 12 at 7-8. Plaintiff does not argue otherwise, but simply insists that "Texas law applies to the arbitration clause." Doc. 14 at 10. This is incorrect: "Federal law governs the interpretation and validity of an arbitration clause subject to the Federal Arbitration Act." *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 n.5 (5th Cir. 1990). If Plaintiff means that Texas law applies to the extent state law is relevant under the FAA, that is beside the point.

Under the FAA, in determining the validity of an agreement to arbitrate, federal courts may consider generally applicable contract defenses available under state law. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). To do so, a court must first determine the applicable state

---

[1] Unless defined herein, capitalized terms have the same meaning as in the Motion.

law, giving effect to the parties' choice of law if they have made a valid and enforceable choice. *First Investors Corp. v. Am. Capital Fin. Services, Inc.*, 823 F.2d 307, 310 (9th Cir. 1987). Here, the Promissory Note contains a Utah choice-of-law provision, but the outcome of Plaintiff's unconscionability and public policy challenges is the same under both Utah and Texas law.[2] *See* Doc. 12 at 8 n.1 (citing cases). As such, there is no need to analyze whether Utah or Texas law applies to this Motion. *See, e.g.*, *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559 (5th Cir. 2011) (refraining from choice-of-law analysis in ruling on a motion to compel arbitration where there was no difference in outcome under the two potential laws).

B.  **The Arbitration Agreement Does Not Waive Federal Rights.**

Plaintiff first challenges the Arbitration Agreement as unenforceable because it purportedly waives her right to bring a RICO claim. Doc. 14 at 12-15. It does not. Plaintiff's argument appears to be that by selecting Utah law in the choice-of-law clause, the parties excluded federal law. Not so. To start, the challenged clause plainly states that "the Note is governed by federal law." Doc. 1-2 at 3 ¶ 17. That alone defeats this argument. Further, simply selecting another state's law does not waive federal law. *See* Doc. 12 at 19-20 (citing cases). Accordingly, even assuming the Utah choice-of-law provision governs the Promissory Note, the Arbitration Agreement does not waive any federal right.

Not satisfied with that result, Plaintiff strains to read into the Promissory Notes a waiver of federal rights. According to Plaintiff, (i) because Plaintiff would have a RICO claim based on

---

[2] Plaintiff's Opposition reveals that her argument that the Arbitration Agreement is void under public policy is limited to the claim "that the 'Arbiter must enforce' the loan agreements" and "declare the loans valid." Doc. 14 at 18. Because the challenged provision merely reiterates a basic principle of contract law, it fails under Texas or Utah law. *Compare Kiernan Family Draper, LLC v. Hidden Valley Health Ctrs.*, 497 P.3d 330, 335 (Utah 2021) (stating that Utah courts enforce agreements "as written") *with* Doc. 12 at 16 (citing Texas cases for the same).

Texas's usury limit (but not Utah's), and (ii) because the arbitrator must apply Utah law, the Promissory Note operates to waive Plaintiff's RICO claim. This argument is wrong on several levels. Doc. 12 at 19-20. To start, this is not waiver. Plaintiff does not dispute that she could, in fact, assert a RICO claim. Rather, it is simply a complaint that her particular claim may be less likely to succeed if the arbitrator enforces the Utah choice-of-law clause.

Further, Plaintiff offers no credible explanation for her assertion that the arbitrator must apply Utah law without conducting a choice-of-law analysis. As established in OppFi's Motion and discussed further herein, the arbitrator is free to conduct a choice-of-law analysis, just as a court would. *Infra* section D. That it may be more difficult for Plaintiff to satisfy a particular element under a federal claim is not equivalent to the scenario where a plaintiff cannot press a federal claim *at all*.

Moreover, none of the out-of-circuit tribal choice-of-law cases Plaintiff cites are applicable. Two of these cases involve provisions that expressly state that federal law *does not apply* and were invalidated on that basis. *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669-70 (4th Cir. 2016) (agreement provided "that no . . . federal law applies to this Agreement"); *Dillon v. BMO Harris Bank, N.A.,* 856 F.3d 330, 335 (4th Cir. 2017) (same). The others mandated the use of tribal law to the exclusion of federal law. *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332, 342 (4th Cir. 2020) (arbitration agreement requiring the arbitrator to "apply Tribal law and the terms of this Agreement," mandating that the arbitrator's decision "be consistent with" Tribal Law, and limiting remedies to those "available under Tribal Law," combined to "provide that tribal law preempts the application of any contrary law—including contrary federal law"); *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 292 (4th Cir. 2020) (same); *Hengle v. Treppa*, 19 F.4th 324, 338 (4th Cir. 2021) (same). In contrast, nothing in the Arbitration Agreement or the Promissory

Note disavows, preempts, or replaces federal law—either expressly or by implication. There is simply a Utah choice-of-law provision and, as the cases Plaintiff cites make clear, a "foreign choice of law provision, of itself, will not trigger application of the prospective waiver doctrine."[3] *Dillon*, 856 F.3d at 334.

In short, the driving concern from the tribal choice-of-law cases was that the entities employing such clauses were attempting to operate "free from the strictures of any federal law." *Dillon*, 856 F.3d at 335. Nothing about the Promissory Note here suggests that OppFi is attempting to operate outside the bounds of federal law. Just the opposite; for all these reasons, federal law applies, and Plaintiff is free to press any federal claims in the arbitral forum.

### C. *Prima Paint* and *Buckeye* Forecloses Plaintiff's Argument That The Promissory Note Is Void Under Texas's Usury Law.

OppFi's Motion established that the *Prima Paint* and *Buckeye* rule of severability precludes consideration of Plaintiff's challenge to the Promissory Note's choice-of-law provision because it is a challenge to the contract as a whole. Doc. 12 at 10-14; *see Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (explaining that "the statutory language [of the FAA] does not permit" a court to evaluate a challenge to "the contract generally" on a motion to compel arbitration). Plaintiff's scattershot responses have no merit.

First, Plaintiff notes that there is no delegation clause in the Arbitration Agreement and attempts to distinguish OppFi's cases on this basis. Doc. 14 at 9-10. The lack of a delegation clause is of no consequence. *Prima Paint* did not involve a delegation clause and neither *Prima Paint* nor *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), turned on whether the

---

[3] Also, all of the tribal choice-of-law cases involve arbitration agreements that contain *within* themselves tribal choice-of-law provisions. *See Hengle*, 19 F.4th at 338; *Hayes*, 811 F.3d at 675; *Dillon*, 856 F.3d at 334; *Gibbs v. Haynes Investments, LLC*, 967 F.3d at 335; *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d at 293. That is not true here. Doc. 1-2 at 4 ¶ 21.

5

arbitration agreement at issue related to delegation. Further, the Supreme Court has made clear that the *Prima Paint* and *Buckeye* severability rule operates regardless of whether the challenge is directed at a delegation clause. *See New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 538 (2019) ("[U]nder the severability principle, we treat a challenge to the validity of an arbitration agreement (**or** a delegation clause) separately from a challenge to the validity of the entire contract in which it appears.") (emphasis added). As a result, courts apply it to arbitration agreements without delegation clauses. *See, e.g.*, *Vallejo v. Garda CL Sw., Inc.*, No. CIV.A. H-12-0555, 2013 WL 391163, at *2, 8 (S.D. Tex. Jan. 30, 2013) (applying rule of severability where there was no delegation clause); *Jose Evenor Taboada A. v. AmFirst Ins. Co.*, No. 3:18CV883TSL-RHW, 2019 WL 3604613, at *4 (S.D. Miss. Aug. 6, 2019) ("**[e]ven where there is no delegation provision**," validity challenges to the entire agreement go to the arbitrator) (emphasis added).

Second, Plaintiff repeatedly notes that the Arbitration Agreement states it does not cover "claims related to the validity, enforceability, coverage, or scope of that clause." *See, e.g.*, Doc. 14 at 23. That is of no help to Plaintiff either. The contractual language Plaintiff points to is wholly consistent with *Buckeye*, which held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance," and merely confirms application of the rule of severability. 546 U.S. at 445-46. In *Swanson v. H&R Block, Inc.*, 475 F.Supp.3d 967, 974 (W.D. Mo. 2020) the court reviewed materially identical language and held that such language "affirms that all gateway issues regarding validity are for the arbitrator, save for those directed at the Arbitration Agreement itself." Plaintiff offers no authority for her strained interpretation of this phrase.

Third, Plaintiff claims that even if her arguments "could be viewed as directed to the contract as a whole," they are for the Court because the Arbitration Agreement does not cover

6

them. Doc. 14 at 23. But the Arbitration Agreement has a broad scope clause covering "all claims even indirectly related to . . . this Note." This provision is more than sufficient to encompass Plaintiff's challenge to the Promissory Note's choice-of-law provision.[4] Doc. 1-2 at 4 ¶ 21.

Finally, Plaintiff notes that, in theory, a party can contest the enforceability of an arbitration agreement on the same grounds as it challenges the contract as a whole where the argument, as applied to the arbitration agreement specifically, renders it invalid. Doc. 14 at 21-23. This argument fails out of the gate: Plaintiff does not attempt to explain how her challenge to the Promissory Note's Utah choice-of-law provision is actually a specific challenge to the Arbitration Agreement, as applied or otherwise.[5] *Id*.

Instead, Plaintiff cherry picks a series of other phrases from the Arbitration Agreement and claims that those somehow override *Prima Paint* and *Buckeye*. Doc. 14 at 24. The first phrase that Plaintiff cites, the enforcement provision, merely advises a consumer that the general rule that contracts are enforced according to their terms applies in arbitration, just as it would in court. *Infra* section D. The second and third phrases that Plaintiff cites, that AAA or JAMS rules that conflict with the Arbitration Agreement "don't apply" and that the arbiter must apply substantive law "consistent with the FAA" are of no help to Plaintiff either. Plaintiff has presented no argument

---

[4] In contrast, the severability rule did not apply in *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 862 (Tex. App. 2007), because (i) the disputed arbitration agreement was a standalone agreement—there was nothing to sever; and (ii) the narrow arbitration agreement was limited to "claims arising out of the injury [the plaintiff] suffered during his employment" and thus the plaintiff's procedural unconscionability claim to the entire agreement did "not fall within the scope of the arbitration agreement between the parties."

[5] In *Simpson v. Synergenx Health Kingwood LLC*, No. 4:20-CV-1860, 2021 WL 765410, at *4 (S.D. Tex. Feb. 25, 2021), and *Kinney v. Int'l Bus. Machines Corp.*, 557 F.Supp.3d 823, 830-31 (W.D. Tex. 2021), the courts concluded that the plaintiffs made challenges that applied to the arbitration agreements at issue and thus were for the courts to decide. In contrast, Plaintiff's objections to the choice-of-law clause have nothing to do with arbitration. Moreover, *Kinney* is not, as here, one of those "situations where the gist of the parties' claim was the invalidation of entire contracts that happened to contain arbitration clauses." 557 F.Supp.3d at 831.

or authority establishing that the parties may not agree that the terms of their arbitration agreement will prevail in the event of a conflict with the AAA or JAMS rules. Likewise, she does not and cannot challenge the parties' selection of the FAA to govern the arbitration agreement. Simply put, none of these other phrases permit the Court to address challenges to the Promissory Note as a whole under *Prima Paint* and *Buckeye*.

Moreover, that the Arbitration Agreement's own choice-of-law clause states that "[t]he Arbiter must apply substantive law consistent with the FAA" provides a further basis to reject Plaintiff's "as applied" argument. *See* Doc. 1-2 at 4 ¶ 21. Consistent with the Arbitration Agreement's choice-of-law provision, the challenged Utah choice-of-law provision actually excludes from its coverage the Arbitration Agreement. *Id.* at 3 ¶ 19 ("[t]his Note is governed by federal law and the laws of the State of Utah, except that the Arbitration Clause is governed by the Federal Arbitration Act"). Under this language, the FAA governs any challenge to the Arbitration Agreement, and the choice-of-law analysis Plaintiff claims is precluded is actually specifically authorized because choice-of-law rules are substantive law. *See Rosenberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir. 1985). As such, Plaintiff's claim that the arbitrator cannot engage in choice-of-law analysis has no merit.

In *Tura v. Med. Shoppe Int'l, Inc.*, No. CV 09-7018 SVW (VBKx), 2010 WL 11506428, at *1 (C.D. Cal. Mar. 3, 2010), the court rejected Plaintiff's same argument, concluding that "[i]f the arbitration provision is enforceable, then the arbitrator must decide the parties' substantive rights—including whether the choice-of-law clause impermissibly curtails Plaintiffs' substantive rights under California law." *Id.* at *7 (citing *Buckeye*, 546 U.S. at 445-46). So too here. Under *Buckeye*, whether to enforce the Utah choice-of-law provision or apply Texas law to Plaintiff's usury claim is a matter for the arbitrator. *See* Doc. 12 at 12-13 (citing cases).

8

### D. The Enforcement and Choice-of-law Provisions Are Valid.

Next, Plaintiff contends that two routinely-enforced provisions render the Arbitration Agreement substantively unconscionable and/or void against public policy. These claims fail.

First, Plaintiff argues the phrase stating that the arbitrator "must enforce your agreements with us, as they are written" prevents the Arbitrator from considering Plaintiff's defenses to enforcement of the Promissory Note. Doc. 14 at 18. It does nothing of the sort. As explained in the Motion, that language advises the consumer that the same exact standard that applies in court when interpreting contracts applies in arbitration as well. Arbitrators, like courts, enforce agreements "as they are written." *Neil Bros. Grain Co. v. Hartford Fire Ins. Co.,* 1 F.2d 904, 907 (9th Cir. 1924) ("[I]t is the plain duty of the courts to enforce the contract as made."); *see* Doc. 12 at 16 (citing cases). There is nothing improper about this language.

Tellingly, despite nearly a dozen references to this phrase in her Opposition, Plaintiff offers no authority supporting her construction of this language. Instead, Plaintiff asserts that an arbitrator's powers are more limited than a court's and, on that basis, Plaintiff speculates that an arbitrator would interpret this language to prohibit an independent choice-of-law analysis. Doc. 14 at 14-15. But Plaintiff's citation to *Stolt-Nielsen* shows the opposite. There, the Supreme Court held that an arbitrator could not impose its "own concept of sound policy" to create a procedure for class arbitrations without "identifying and applying a rule of decision derived from the FAA or either maritime or New York law." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 676-77 (2010). As the Court explained, an arbitrator's role is not to create policy, but to "to interpret and enforce a contract," which is exactly what the Arbitration Agreement in this case explained to Plaintiff. *Stolt-Nielsen* further suggested that the arbitrator in that case should have

conducted a choice-of-law analysis, which is entirely permissible.[6] *Id*.

Second, Plaintiff argues that the Promissory Note's choice-of-law provision renders the Arbitration Agreement substantively unconscionable. Doc. 14 at 19-21. But as explained above, under *Buckeye,* this Court may not consider this argument because the challenged clause is not within the severable Arbitration Agreement. Doc. 12 at 10-14.[7] Moreover, Plaintiff erroneously assumes that the choice-of-law clause requires the arbitrator to enforce Utah law without conducting its own choice-of-law analysis. In assessing Plaintiff's claims, an arbitrator is permitted to conduct a choice-of-law analysis, as a Texas or Utah court would. *See* Doc. 12 at 13-14 (discussing *Broussard v. FinWise Bank, Inc.*, No. SA-21-CV-01238-OLG, 2022 WL 2057488 (W.D. Tex. May 12, 2022)).

### E. Any Invalid Provision Is Severable.

Even if the Court were to find that a provision of the Promissory Note rendered the Arbitration Agreement unenforceable, OppFi's Motion explained that any such provision is severable. Doc 12. at 14-15. Plaintiff offers two meritless arguments in response.

First, Plaintiff argues that the parties did not intend to allow severance because the Arbitration Agreement does not have a severance clause. Doc. 14 at 19. To the contrary, the

---

[6] Plaintiff claims that the challenged language is unique because she did not find any cases on Westlaw discussing the exact same language. This unsupported assertion proves nothing. For one, no authority suggests that an entity must employ certain magic words for such a provision to be valid and enforceable. In any event, the general rule that contracts and arbitration agreements are enforced according to their terms is referenced in thousands of cases and Plaintiff does not cite a single one in which that language was construed to prohibit a defendant from raising a defense, based on a choice-of-law clause, or otherwise.

[7] *Pinela v. Neiman Marcus Group, Inc.* does not help Plaintiff. That case involved a stand-alone arbitration agreement that delegated arbitrability challenges to the arbitrator and required the arbitrator to apply Texas law to those challenges. 238 Cal.App.4th 227, 234, 243-44 (2015). Thus, there were no severability issues to consider: a challenge to the choice-of-law clause was by definition directed to the arbitration agreement itself.

Promissory Note includes a severability clause that provides that "[i]f any provision of this Note is held unenforceable, the remainder of this Note will remain in full force and effect, except as provided otherwise in the Arbitration Clause," and no provision in the Arbitration Agreement "otherwise" impacts the severability analysis. Doc. 1-2 at 3 ¶ 17.

Second, relying on a series of tribal-lending cases, Plaintiff argues that severance is inappropriate where the agreement's "essential purpose" is to violate usury law and represents an "integrated scheme to contravene public policy." Doc. 14 at 16, 19. The arbitration agreements at issue in the tribal lending cases cited by Plaintiff are wholly distinguishable from the Arbitration Agreement at issue in this case. Those cases involved arbitration agreements that contained within themselves tribal choice-of-law provisions that expressly displaced federal law and mandated application of "Tribal Law" if the consumer opted-out of arbitration. Here, there is no integrated scheme to avoid application of federal law—there is no express or implicit waiver of any federal statute, the Plaintiff was free to opt-out of arbitration, and the choice-of-law analysis is permitted in court or in arbitration.

### F. This Motion Resolves Plaintiff's Request for a Declaration That the Arbitration Agreement is Unenforceable.

Finally, Plaintiff argues that her declaratory relief claim is not arbitrable because it challenges (in part) the enforceability of the Arbitration Agreement. Doc. 14 at 12. This argument fails because resolution of this Motion will address all of Plaintiff's arguments for declaring the Arbitration Agreement unenforceable. Once this motion is resolved there will be nothing left to adjudicate in court.

## III. CONCLUSION

For all the foregoing reasons, the Court should compel arbitration and dismiss this case (or in the alternative, stay this case). Doc. 12 at 20.

DATED:  July 18, 2022                    Respectfully submitted,

                                                         */s/ April E. Lucas*
Douglas D. Dodds (SBN 05932020)
April E. Lucas (SBN 24046323)
**McGinnis Lochridge LLP**
1111 West 6th Street
Bldg. B, Ste 400
Austin, Texas 78703
(512) 495-6000
(512) 495-6093 Fax
ddodds@mcginnislaw.com
alucas@mcginnislaw.com

Fredrick S. Levin *(Pro Hac Vice)*
Ali M. Abugheida *(Pro Hac Vice)*
**BUCKLEY LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel: (310) 424-3900
Fax: (310) 424-3960
flevin@buckleyfirm.com
aabugheida@buckleyfirm.com

*Attorneys for Opportunity Financial, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2022, I have served the forgoing document via the CM/ECF system which will send notification of such filing to the following:

Dan Terzian
Warren Terzian LLP
222 N Pacific Coast Highway, Suite 2000
Los Angeles, California 90245
Tel: (213) 410-2620
Email: Dan.Terzian@warrenterzian.com

John R. Davis
Slack Davis Sanger, LLP
6001 Bold Ruler Way, Suite 100
Austin, Texas 78746
Tel: (512) 794-8686
Fax: (512) 795-8787
Email: JDavis@slackdavis.com

/s/ *April E. Lucas*
April E. Lucas

Douglas D. Dodds (SBN 05932020)
April E. Lucas (SBN 24046323)
**McGinnis Lochridge LLP**
1111 West 6th Street
Bldg. B, Ste 400
Austin, Texas 78703
(512) 495-6000
(512) 495-6093 Fax
ddodds@mcginnislaw.com
alucas@mcginnislaw.com