# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **KRISTEN MICHAEL, an individual on behalf of herself and all persons similarly situated,** § § § § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | Case No. 1:22-cv-00529-LY | |
| § | | |
| **OPPORTUNITY FINANCIAL,** § | | |
| **LLC, a limited liability company,** § | | |
| *Defendant* § | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Opposed Motion to Compel Individual Arbitration and Dismiss or Stay, filed June 27, 2022 (Dkt. 12); Plaintiff's Opposition to Defendant's Motion to Compel Arbitration, filed July 11, 2022 (Dkt. 14); and Defendant's Reply, filed July 18, 2022 (Dkt. 16). The District Court referred the Motion and related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 15.

### I.   Background

Plaintiff Kristen Michael, a Texas resident, alleges that Defendant Opportunity Financial, LLC ("OppFi"), an Illinois-based online money lender, has issued consumer loans to her and millions of other borrowers in Texas with interest rates exceeding 130%, which is above the 30% maximum rate permitted under Texas law. Plaintiff's Complaint, Dkt. 1 ¶¶ 1, 2, 89.

1

Under Texas law, a lender such as OppFi "must hold a license" to "engage in the business of making, transacting, or negotiating loans." TEX. FIN. CODE § 342.051(a) (West 2011). The maximum interest rate such a lender may charge on a consumer loan not secured by real property is "30 percent a year." *Id.* § 342.201(e)(1). An entity who charges more than the maximum interest rate is liable to the obligor for an amount equal to twice the amount of the interest or time price differential contracted for, charged, or received; reasonable attorney's fees set by the court; and three times the economic loss. *Id.* §§ 349.001(a), 349.003(a)(1). An entity who charges or receives interest at twice the amount authorized by law "is liable to the obligor as an additional penalty for all principal or principal balance, as well as all interest or time price differential." *Id.* § 349.002 (a).

Plaintiff alleges that OppFi operates a "rent-a-bank scheme," in which a lender markets high-interest loans to consumers in a state where interest rate caps are low, using a partnership with a bank chartered in a different state where interest rate caps are higher, in an attempt to skirt the lower interest rate caps in the state where the loans are made. *Id.* ¶ 8. Specifically, Plaintiff alleges that in states like Texas, where high interest rates on consumer loans are illegal, OppFi names two entities on the loan agreements: OppFi as the loan servicer and, as the purported lender, a bank chartered in Utah, which has no usury laws prohibiting high-interest loans. *Id.* ¶ 6. Plaintiff further alleges that after the loans are signed, OppFi "buys 95% of each loan from the rented Utah-chartered bank." *Id.* ¶ 40. Plaintiff alleges that OppFi bears all risk of loss, holds the predominant economic interest, funds the expenses for the provision of the loans, and "handles all acquisitions, all marketing, all underwriting, and all servicing of the loans." *Id.* ¶ 45. Plaintiff alleges that OppFi "is the true lender on these loans." *Id.* ¶ 39.

Plaintiff alleges that on June 22, 2021, she took out a $1,400 loan from OppFi at an annual percentage rate of 130.54% and a duration of 19 months (the "Loan Agreement"). *Id.* ¶ 92. Plaintiff contends that the Loan Agreement violates Texas law because the interest rate exceeds the maximum amount allowed under Texas law.

To obtain her loan, Plaintiff electronically signed a Promissory Note and Disclosure Statement listing the terms of the loan. Dkt. 1-2 (the "Note"). The Note states that FinWise Bank, a Utah state-chartered bank, is the lender and its mailing address is "C/O Opportunity Financial, LLC, 130 E. Randolph St., Suite 3400 Chicago, IL 60601." *Id.* at 2. This is OppFi's corporate mailing address. *Id.* at 6. The Note further states that "Opportunity Financial, LLC ('OppLoans')" is the servicer on the loan. *Id.* The Note also contains an arbitration clause requiring the arbitration of "all Claims" related to the loan. *Id.* at 5-7 (the "Arbitration Clause").

On June 1, 2022, Plaintiff filed this putative class action lawsuit under Federal Rule of Civil Procedure 23, alleging (1) violations of Texas usury laws, TEX. FIN. CODE §§ 342.001, 302.001, 349.001; (2) unjust enrichment; and (3) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1962(d). Plaintiff also seeks a declaratory judgment that OppFi is the true lender of the loans; the loans are governed by Texas law; and the loan contracts, including the arbitration clause, are unconscionable, void, and unenforceable. The suit is filed on behalf of Plaintiff and (1) the putative class, defined as: "All individuals in Texas who obtained a loan from, through, by way of, or with the assistance of Opportunity Financial on or after June 2, 2018, with an interest rate over 30% per year"; and (2) the RICO Sub-Class, defined as: "All individuals in Texas who obtained a loan from, through, by way of, or with the assistance of Opportunity Financial on or after June 2, 2018, with an interest rate over 60% per year." *Id.* ¶¶ 96, 98.

OppFi now moves to compel arbitration, arguing that all of Plaintiff's claims must be submitted to arbitration pursuant to the Arbitration Clause in the Note. Plaintiff argues that the Arbitration Clause is unenforceable under both federal and Texas law.

## II.   Legal Standard

Congress enacted the Federal Arbitration Act ("FAA") in 1925 "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2, the primary substantive provision of the Act, provides, in relevant part, as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has described this provision as reflecting both a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility*, 563 U.S. at 339 (cleaned up). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.*

Parties may agree to have an arbitrator decide not only the merits of a particular dispute but also "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Thus, "parties may delegate threshold

arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 139 S. Ct. at 530 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

"[T]he FAA requires courts to first 'determine whether a valid arbitration agreement exists' before granting motion to compel arbitration." *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) (quoting *Henry Schein*, 139 S. Ct. at 530). Therefore, "courts must decide at the outset whether an enforceable arbitration agreement exists at all. The parties cannot delegate disputes over the very existence of an arbitration agreement." *Newman*, 23 F.4th at 398 (cleaned up).

To determine whether an Arbitration Clause is enforceable, courts apply two analytical steps: "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Ordinarily, both questions are for the court. *Id.* But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the arbitrator decides the second question. *Id.*

The savings clause provision in the FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

### III.     Analysis

**A.  The Arbitration Clause**

The Arbitration Clause provides, in relevant part:

> In arbitration, a third party ("Arbiter") resolves disputes informally. You, related third parties (including but not limited to OppLoans), and we waive the right to go to court. Such "parties" waive jury trials.
>
> ***
>
> This Clause governs you and us; your heirs; our successors, assigns, affiliates and controlling parties; and "related parties" who have provided services in connection with any loan to you, including OppLoans.
>
> This Clause governs all "Claims" of one party against another. In this Clause, the word "Claims" has the broadest reasonable meaning consistent with this Clause. It includes all claims even indirectly related to your application, the loan, this Note and your agreements with us. It includes claims related to information you previously gave us. It includes all past agreements. It includes extensions, renewals, refinancings or payment plans. It includes claims related to collections, privacy and customer information. ***However, it DOES NOT include claims related to the validity, enforceability, coverage or scope of this Clause. Those claims shall be determined by a court.***

Dkt. 1-2 at 5 (emphasis added). The last sentence demonstrates that the parties did not delegate arbitrability to the arbitrator, as the parties agree. *See* Dkt. 14 at 9; Dkt. 16 at 5 (acknowledging "[t]he lack of a delegation clause"). The Arbitration Clause further states:

> **You <u>waive</u> your rights to:**
>
>   **1. Have juries resolve Claims.**
>   **2. Have courts, other than small-claims courts, resolve Claims.**
>   **3. Bring Claims as a private attorney general or representative.**
>   **4. Have Claims decided in a class action.**
>
> <u>**THIS**</u> <u>**CLAUSE**</u> <u>**DOES**</u> <u>**NOT**</u> <u>**ALLOW**</u> <u>**CLASS**</u> <u>**ACTIONS.**</u> You <u>waive your right to be <u>in a class action or a class arbitration</u>, either as a representative or a member. Only individual arbitration, or small-claims courts, will resolve Claims. You waive your right to bring representative Claims. **Unless reversed on appeal, if a court invalidates this waiver, the Clause will be void.**
>
> ***

6

> This transaction involves interstate commerce, so the FAA governs. The Arbiter must apply substantive law consistent with the FAA. The Arbiter must follow statutes of limitation and privilege rules.
>
> ***
>
> The Claimant selects the company to manage the arbitration–either the American Arbitration Association ("AAA") (1-800-778-7879), www.adr.org, or JAMS (1-800-352-5267), www.jamsadr.com. The parties may also agree in writing to a local attorney, retired judge or Arbiter in good standing with another arbitration group. The Arbiter must arbitrate under AAA or JAMS consumer rules. You may get a copy of these rules from such group. Any rules that conflict with this Clause don't apply. If these options aren't available, a court may choose the Arbiter. Such Arbiter must enforce your agreements with us, as they are written.

Dkt. 1-2 at 5-6.

In addition to the Arbitration Clause, the Note contains the following choice of law and severability provision:

> This Note is governed by federal law and the laws of the State of Utah, except that the Arbitration Clause is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-9. If any provision of this Note is held unenforceable, the remainder of this Note will remain in full force and effect, except as provided otherwise in the Arbitration Clause. You and we agree that the transaction represented by this Note involves interstate commerce for all purposes.

*Id.* at 4.

### B. The Arbitration Clause Is Enforceable

Plaintiff does not dispute that she signed the Note, but argues that the Arbitration Clause is unenforceable because it (1) prospectively waives her federal RICO claims, in violation of federal law, and (2) is void under Texas law.

#### 1. RICO Claims

Statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). The Supreme Court has held that arbitration agreements relating to claims under the civil provisions of RICO are

7

enforceable under the FAA. *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 242 (1987) (finding that plaintiffs "may effectively vindicate their RICO claim in an arbitral forum, and therefore there is no inherent conflict between arbitration and the purposes underlying § 1964(c)").

An arbitration agreement that prohibits a party from asserting federal statutory claims is unenforceable. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (noting that "a provision in an arbitration agreement forbidding the assertion of certain statutory rights" would be unenforceable); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n. 14 (5th Cir. 2003) (holding that arbitration agreement's "ban on punitive and exemplary damages" was unenforceable because "Title VII provides for statutory punitive damages"). "By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

Plaintiff argues that the Arbitration Clause is unenforceable because it prospectively waives her federal RICO claims. Because the Choice of Law provision in the Note requires the arbiter to apply "the substantive law of Utah" and the Arbitration Clause states that the "Arbiter must enforce your agreements with us, as they are written," Plaintiff argues, the arbiter is required to enforce the loan agreement as "valid under Utah law." Dkt. 14 at 14. Plaintiff contends that such a finding would bar her RICO claims because a violation of state law is required to show a violation of 18 U.S.C. §1961(6) and she would not be able to show a violation of Utah law.

The Court disagrees that the Arbitration Clause bars RICO claims. The Choice of Law provision in the Note states that: "This Note is governed by federal law and the laws of the State of Utah, except that the Arbitration Clause is governed by the Federal Arbitration Act ('FAA'),

8

9 U.S.C. §§ 1-9." Dkt. 1-2 at 4. The Choice of Law provision thus excludes the Arbitration Clause. Moreover, the Arbitration Clause states that "[t]he Arbiter must apply substantive law consistent with the FAA." *Id.* at 5. The Choice of Law provision and the Arbitration Clause do not mandate that the arbiter apply Utah law; nor do these provisions bar Plaintiff's RICO claims. Plaintiff does not dispute that she could assert a RICO claim in the arbitration proceeding.

It is not clear whether an arbiter will apply Utah or Texas law in this case. While the Note states that Utah law applies, Plaintiff is a Texas resident who executed and performed the contract in Texas. Plaintiff's concern that the arbiter may apply Utah law goes to the merits of her claims and is not properly before this Court. "The question before the Court is whether to enforce the arbitration provision, not which law to apply in resolving the merits and damages issues in the dispute." *Broussard v. FinWise Bank, Inc.*, No. SA-21-CV-01238-OLG, 2022 WL 2057488, at *4 (W.D. Tex. May 12, 2022). It will be for the arbitrator to determine whether choice-of-law principles require the application of Texas law rather than Utah law. "Plaintiff's concerns about choice-of-law are not properly before this Court as the issue 'must be decided in the first instance by the arbitrator.'" *Id.* (quoting *Vimar Seguros Y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995)).

### 2. Texas Law

As stated above, Plaintiff also argues that the Arbitration Clause is unenforceable under Texas law because it is unconscionable and violates public policy. Under Texas law, "as with any other contract, agreements to arbitrate are valid unless grounds exist at law or in equity for revocation of the agreement." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). Unconscionable contracts and contracts that violate public policy are unenforceable under Texas law. *Id.* An arbitration agreement that prohibits statutory remedies is substantively unconscionable and therefore void under Texas law. *Id.* at 352 (holding that arbitration

agreement which eliminated two types of remedies available under anti-retaliation provisions of Texas Workers' Compensation Act was void under Texas law). As under federal law, in Texas: "An arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may 'effectively vindicate his statutory rights.'" *Id.* at 349 (quoting *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)).

Plaintiff argues that the Arbitration Clause is unconscionable and void under Texas law because it requires the arbiter to apply Utah law and "gives the arbiter no choice but to declare the loans valid." Dkt. 14 at 18. As the Court found with respect to her RICO claims, this argument lacks foundation. The Note and the Arbitration Clause do not waive Plaintiff's statutory claims under federal or Texas law. Plaintiff's concern with the Choice of Law provision in the Note is premature and is not grounds for voiding the Arbitration Clause. The arbiter will address the merits of Plaintiff's claims, including choice of law principles.

Plaintiff presents no valid grounds to declare the Arbitration Clause unenforceable. Accordingly, the Court finds that the Arbitration Clause is enforceable.

**C. The Arbitration Clause Covers All of Plaintiff's Claims**

Next, the Court must determine whether Plaintiff's claims are covered by the Arbitration Clause. *Kubala*, 830 F.3d at 201. Plaintiff does not dispute that her RICO and state law claims fall within the Arbitration Clause, but contends that her claim for declaratory relief that the Arbitration Clause "is unconscionable, void and unenforceable" does not fall within the Arbitration Clause. Dkt. 1 ¶ 128. As explained *supra*, the Court disagrees, and concludes that the Arbitration Clause covers all of Plaintiff's claims.

### D. This Case Should Be Dismissed

Finally, the FAA provides that, once a court determines that a motion to compel arbitration should be granted, it should "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Fifth Circuit, however, has held that dismissal, rather than a stay pending arbitration, is proper "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018) ("Some circuits have held that district courts must stay a case when all claims are submitted to arbitration, but this circuit allows district courts to dismiss such claims outright."); *Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("Although Section 3 of the Federal Arbitration Act directs district courts to stay pending arbitration, we are bound by our precedent which states that dismissal is appropriate 'when *all* of the issues raised in the district court must be submitted to arbitration.'") (quoting *Alford*, 975 F.2d at 1164)). Because all issues Plaintiff has raised must be referred to arbitration, the Court recommends dismissal of this action.

### IV.   Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Compel Arbitration (Dkt. 12) and **DISMISS** Plaintiff's lawsuit without prejudice.

The Court **FURTHER ORDERS** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

### V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being

made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 24, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE