**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **Kristen Michael,** an individual on behalf of herself and all persons similarly situated | |
| Plaintiff | |
| | Civil Action No.: 1:22-cv-00529-LY |
| v. | |
| | Judge Lee Yeakel |
| **Opportunity Financial, LLC,** a limited liability company | |
| Defendant | |

**DEFENDANT OPPORTUNITY FINANCIAL, LLC'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT OPPORTUNITY FINANCIAL'S MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..............................................................................................3

II.     BACKGROUND ...............................................................................................5

III.    STANDARD OF REVIEW ...............................................................................8

IV.     ARGUMENT .....................................................................................................8

        A.      The Report's Conclusion That the Arbitration Clause Is Enforceable
                Negates Plaintiff's Objection About Her Declaratory Relief Claim. ......8

        B.      Plaintiff Fails to Identify Any Error in the Court's Determination That the
                Arbitration Clause Is Not Unenforceable As a Prospective Waiver. .......9

                1.      Plaintiff's Objection Should Be Dismissed Because It Merely
                        Recycles the Prospective Waiver Arguments the Report Rejected. ...........9

                2.      Plaintiff's Recycled Arguments Fare No Better the Second Time. ...........10

        C.      Plaintiff's New "Prospective Waiver" Challenge Fails. .......................20

        D.      Plaintiff Fails to Identify Any Error in the Court's Determination That the
                Arbitration Clause Is Enforceable Under Texas Law. ..........................21

        E.      Plaintiff's Claim That Severance Is Improper Is Not an Objection. .....21

V.      CONCLUSION ................................................................................................22

## I.      INTRODUCTION

Plaintiff Kristen Michael filed this lawsuit against Opportunity Financial, LLC ("OppFi") to challenge the interest rate on a loan she obtained from FinWise Bank.  Plaintiff's claims are substantively meritless, but this is neither the time nor the forum to address Plaintiff's claims. Plaintiff agreed to arbitrate her claims and OppFi moved to compel arbitration.  In her recent Report and Recommendation (the "Report"), Judge Hightower agrees that Plaintiff's claims must be arbitrated and has recommended that the Court grant OppFi's motion.  Plaintiff objects to the Report, but her objections are faulty for both procedural and substantive reasons.

Plaintiff first objects to the Report's recommendation about her declaratory judgment claim.  Her declaratory judgment claim has multiple components.  On the one hand, it seeks relief going to the merits of the underlying dispute—that OppFi is the true lender of the loans, for example.  Compl. ¶¶ 127-28.  On the other, it seeks a declaration that the loan contracts' severable, embedded arbitration agreement (the "Arbitration Clause") is unconscionable, void, and unenforceable.  *Id.*  Plaintiff claims the magistrate judge erred to the extent that she found arbitrable the request for declaratory relief with respect to the enforceability of the severable Arbitration Clause embedded in the loan contract.  Plaintiff contends the Court must decide this component of her declaratory relief claim because the Arbitration Clause specifically excludes from its scope disputes about its enforceability.  This objection misses the mark because the magistrate judge found "that the Arbitration Clause is enforceable."  Doc. 17 at 10.  This finding resolves and moots the portion of the declaratory judgment claim about the Arbitration Clause; it leaves no issues about the enforceability of the Arbitration Clause for the arbitrator to decide. Therefore, the Report negates Plaintiff's objection.  Plaintiff's objection is that the Court must decide the enforceability of the Arbitration Clause; that is exactly what the Report does.

Next, Plaintiff rehashes the same arguments she made in her opposition regarding prospective wavier.  This kind of broad objection to a Report is improper and need not be considered by the Court.  But even if the Court considers Plaintiff's prospective waiver arguments de novo, she again fails to demonstrate that it is appropriate for the Court to even consider the argument at this stage of the case.  Under Supreme Court precedent set forth in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 105 S. Ct. 3346 (1985) ("*Mitsubishi*"), and *Vimar Seguros y Reaseguros S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995) ("*Vimar*"), and the terms of the Arbitration Clause, a prospective waiver challenge to an arbitration clause is premature until the arbitrator has conducted the choice-of-law analysis.

Here, the choice-of-law analysis is committed to the arbitrator who is free to decide what law applies.  As such, the out-of-circuit tribal cases Plaintiff relies on that find a prospective waiver at the motion to compel stage are inapplicable.  Those cases involved arbitration agreements that categorically precluded an arbitrator from applying federal law.  The Arbitration Clause here does nothing of the sort.  Moreover, the Utah choice-of-law clause in Plaintiff's promissory note (the "Promissory Note") specifically contemplates federal law and the Arbitration Clause itself states that it is governed by the Federal Arbitration Act ("FAA").  The magistrate judge therefore correctly concluded that Plaintiff's challenge is premature.

Plaintiff nonetheless attempts to demonstrate that the arbitrator will be bound to apply Utah law by linking the Promissory Note's Utah choice-of-law clause with cherry-picked phrases from the Arbitration Clause, but this cobbled-together effort fails.  The Arbitration Clause's directive to "apply substantive law consistent with the FAA" is intended to ensure that state arbitration rules do not apply.  It does not limit the arbitrator's ability to conduct an independent choice-of-law analysis with respect to Plaintiff's substantive claims.  And the fact that the Utah

choice-of-law clause specifically excludes the Arbitration Clause reinforces the arbitrator's duty to conduct that analysis.  Nor does the Arbitration Clause's enforcement provision—requiring the arbitrator to "enforce your agreements with us, as they are written"—require the arbitrator to apply Utah law.  This clause merely reiterates the basic contract principle that courts and arbitrators alike must apply the plain text of the agreements they are asked to enforce.

Plaintiff next objects that the magistrate judge incorrectly concluded that the Utah choice-of-law clause does not apply to the Arbitration Clause.  Plaintiff's proposed three possible interpretations of the clause is a straw man—none is the correct interpretation.  The plain text of the clause demonstrates that Utah law does not apply to the Arbitration Clause.

Plaintiff also raises a new argument that, because the arbitrator must apply Utah law, there "is an invalid prospective waiver of [Plaintiff's] right to challenge the clause under Texas law."  Doc. 18 at 22.  This is not an objection to the Report and the Court should disregard it for that reason.  It is also well off the mark because, among other reasons, the magistrate judge *considered* Plaintiff's Texas challenges to the enforceability of the Arbitration Clause. Plaintiff's objection to the Report's rejection of her Texas-law challenges also fails for the same reasons as her objections to the Report's denial of her prospective waiver challenge.

Ultimately, instead of identifying errors in Judge Hightower's analysis, Plaintiff's objections rehash the same arguments the Report rejected.  This alone demonstrates the strength of the Report and the Court should adopt it in full.

## II.    BACKGROUND

### A.    OppFi's Motion to Compel Arbitration

On June 27, 2022, OppFi filed a Motion to Compel Arbitration and Dismiss or Stay pursuant to the FAA.  Doc. 12.  OppFi explained that Plaintiff expressly agreed to arbitrate her claims that her loan from FinWise Bank is unenforceable because its interest rate violates Texas

law when she signed the Promissory Note for the loan.  *Id.* at 7.  Plaintiff does not dispute that she agreed to arbitration, but nonetheless raised several challenges to arbitration in the Complaint.  OppFi addressed each.

First, Plaintiff claims that the Arbitration Clause is substantively unconscionable because of the Utah choice-of-law clause in the Promissory Note, which provides, "This Note is governed by federal law and the laws of the State of Utah, except that the Arbitration Clause is governed by the [FAA]."  OppFi explained that because the choice-of-law clause applies to the Promissory Note, Plaintiff's challenge is for the arbitrator under the severability doctrine set forth in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).  Doc. 12 at 10-11.  In any event, the presence of a choice-of-law clause is not a basis to avoid arbitration because the arbitrator will be permitted to conduct a choice-of-law analysis when evaluating the merits of the dispute, and Plaintiff may argue for the applicability of Texas law in arbitration.  *Id.* at 11-14.

Second, Plaintiff contends that the Arbitration Clause is substantively unconscionable because it requires the arbitrator to enforce the agreements "as they are written."  OppFi explained that this phrase simply announces a black letter principle of contract interpretation that applies equally in court as in arbitration.  Doc. 12 at 15-16.  It does not force the arbitrator to enter judgment in OppFi's favor without consideration of Plaintiff's defenses to enforcement of the Promissory Note.  *Id.* at 16.

Third, Plaintiff argues that the Arbitration Clause is substantively unconscionable because it limits borrowers from offensively using issue preclusion against OppFi in the event that another borrower prevails in arbitration.  Doc. 12 at 17-19.  OppFi explained that not only is it routine for parties to agree to this limitation, but Plaintiff's concern is entirely hypothetical.  *Id.*

Fourth, Plaintiff argues that the Arbitration Clause prospectively waives her rights under federal law.  OppFi explained that the argument fails because the Promissory Note is expressly governed by federal and Utah law, which necessarily includes federal law as well.  Doc. 12 at 19-20.  The Arbitration Clause waives nothing.

## B.    The Magistrate Judge's Report and Recommendation

On October 24, 2022, Judge Hightower issued the Report recommending that the Court grant OppFi's Motion to Compel and dismiss the Complaint.

The Report addressed Plaintiff's prospective waiver claim first.  Doc. 17 at 8.  It recognized the doctrine but disagreed that it applies.  *Id.*  The magistrate judge instead concluded that the Utah choice-of-law clause *excludes* the Arbitration Clause and that neither clause "mandate[s] that the arbiter apply Utah law."  *Id.* at 9.  The Report explained that "[i]t will be for the arbitrator to determine whether choice-of-law principles require the application of Texas law rather than Utah law."  *Id.*  Thus, "Plaintiff's concern that the arbiter may apply Utah law goes to the merits of her claims and is not properly before this Court."  *Id.*

The magistrate judge then rejected Plaintiff's unconscionability argument for similar reasons.  *Id.* at 9-10.  Applying Texas law, the magistrate judge concluded that Plaintiff's argument that the enforcement provision requires the arbitrator to declare her loan valid "lacks foundation."  *Id.* at 10.  The magistrate judge reiterated that the Promissory Note and Arbitration Clause do not waive Plaintiff's statutory claims under federal or Texas law and that Plaintiff's concern about the Utah choice-of-law clause is "premature" because the arbitrator will address the merits of Plaintiff's claim, including choice-of-law analysis.  *Id.*

Finally, the magistrate judge concluded that the Arbitration Clause covers all of Plaintiff's claims, including her request for declaratory relief.  *Id.*  Importantly, the Report correctly describes the multiple components of the declaratory relief claim, noting that the claim

seeks "declaratory judgment that OppFi is the true lender of the loans; the loans are governed by Texas law; and the loan contracts, including the arbitration clause, are unconscionable, void, and unenforceable." Doc. 17 at 3. The Report also quotes the last sentence of the Arbitration Clause providing that **"it does NOT include claims related to the validity, enforceability, coverage or scope of this Clause. Those claims shall be determined by a court."** Doc. 17 at 6 (emphasis in original). The Report finds that this last sentence "demonstrates that the parties did not delegate arbitrability to the arbitrator." *Id.*

## III.   STANDARD OF REVIEW

Any party adversely affected by a magistrate judge's report and recommendation may file written objections within fourteen (14) days of being served with the report. 28 U.S.C. § 636(b)(1). To be entitled to de novo review, the objections must specifically identify those findings or recommendations to which objections are being made. *Id.*; *see Talbert v. Lynch,* No. PE:16-CV-00018-RAJ, 2017 WL 11236935, at *1 (W.D. Tex. Feb. 17, 2017). The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419 (5th Cir. 1987). "As a general rule, objections which simply rehash or mirror the underlying claims addressed in the [Report] are not entitled to de novo review." *Hayden v. Dir., TDCJ-CID*, No. 6:19-CV-566-JDK-JKNM, 2022 WL 2345742, at *3 (E.D. Tex. Jun. 29, 2022).

## IV.   ARGUMENT

### A.   The Report's Conclusion That the Arbitration Clause Is Enforceable Negates Plaintiff's Objection About Her Declaratory Relief Claim.

Plaintiff first objects that the Report concluded that the "Arbitration Clause covers all of Plaintiff's claims" (Doc. 17 at 10), including the part of her declaratory relief claim that seeks a judicial declaration that the Arbitration Clause is unconscionable, void, and unenforceable (Compl. ¶ 128). According to Plaintiff, the parties' agreement that the Arbitration Clause does

not cover "claims related to the validity, enforceability, coverage or scope of this Clause" foreclosed Judge Hightower from sending the portion of her declaratory judgment claim about the enforceability of the Arbitration Clause to arbitration. Doc. 1-2, ¶ 21 (p. 5).

The Report does nothing of the sort. The Report decides the enforceability of the Arbitration Clause, concluding "that the Arbitration Clause is enforceable." Doc. 17 at 10. Plaintiff's request for declaratory judgment with respect to enforceability of the Arbitration Clause is moot. Plaintiff thus lacks any claim in court for declaratory judgment predicated on whether the Arbitration Clause is enforceable. *See Noel v. Paul*, No. 3:21-CV-2485-B, 2022 WL 4125216, at *13 (N.D. Tex. Sept. 9, 2022) (concluding that claim for declaratory judgment that 30-day limitation in arbitration agreement was unenforceable rendered moot by the court's resolution of the question as a gateway issue). Likewise, because the Report decides the issue, it leaves nothing for the arbitrator to decide on that issue, the result Plaintiff's objection argues for.

**B.** **Plaintiff Fails to Identify Any Error in the Court's Determination That the Arbitration Clause Is Not Unenforceable As a Prospective Waiver.**

Plaintiff's next objection takes a broad swipe at the magistrate judge's conclusion that the Arbitration Clause does not preclude Plaintiff from asserting a RICO claim in arbitration. Instead of identifying an error in the magistrate judge's analysis, Plaintiff rehashes the arguments she made in opposition to OppFi's Motion to Compel. Her objection should therefore be denied because she fails to identify any clear error in the Report. But even if the Court evaluates Plaintiff's prospective waiver challenge de novo, the challenge fails. *See* Docs. 12, 16.

**1.** **Plaintiff's Objection Should Be Dismissed Because It Merely Recycles the Prospective Waiver Arguments the Report Rejected.**

Plaintiff's "objection" to the magistrate judge's rejection of her prospective waiver challenge is really an attempt to take a second bite at the apple. Plaintiff does not describe any error in the magistrate judge's analysis but instead parrots the same arguments the Report

rejected.[1]  "It is improper for an objecting party to attempt to relitigate the entire contents of the filing before the Magistrate Judge" by raising objections that "are nothing more than a rehashing of the same arguments and positions" in their original papers.  *Talbert*, 2017 WL 11236935, at *3.  This "[f]ailure to make appropriately specific objections excuses the district judge from doing a de novo review."  *Sanchez v. Schlumberger Tech. Corp.*, No. 2:17-CV-102, 2020 WL 519957, at *1 (S.D. Tex. Jan. 30, 2020).

The magistrate judge did not err in concluding that the Arbitration Clause permits Plaintiff to assert her RICO claim in arbitration.  Doc. 17 at 10.  As she correctly explained, the decision about which state law to apply to Plaintiff's substantive claims belongs to the arbitrator.  *Id.*; *see infra* § IV.B.2(b).  Because Plaintiff fails to identify any clear error in the Report's analysis of her prospective waiver challenge, this objection should be overruled.  *See Joe Hand Promotions, Inc. v. Seay*, No. 6:17-CV-00310-ADA, 2018 WL 7286495, at *1 (W.D. Tex. Oct. 16, 2018) (where there is no objection to report, it is reviewed for clear error).

### 2.  Plaintiff's Recycled Arguments Fare No Better the Second Time.

Even under the de novo standard, Plaintiff's recycled arguments fail at every turn.  As a threshold matter, Plaintiff's prospective waiver argument fails for the basic reason that Plaintiff is not barred from asserting a RICO claim in arbitration.  There is no express prohibition in the Arbitration Clause or Promissory Note against application of federal law.  To the contrary, the challenged Utah choice-of-law clause—which applies to the Promissory Note as a whole—

---

[1] The Report did not address OppFi's argument that Plaintiff's challenge to the Utah choice-of-law clause is reserved for the arbitrator under *Buckeye* and *Prima Paint*'s severability doctrine.  The challenged clause is not within or specific to the Arbitration Clause.  Plaintiff's attack on that clause is thus an attack on the Promissory Note as a whole, which is reserved for the arbitrator.  If the Court reconsiders Plaintiff's challenge, OppFi asks it to likewise consider its *Buckeye* and *Prima Paint* argument as an alternative ground to grant OppFi's motion.

provides that "[t]his note is governed by federal law and the laws of the State of Utah."  Doc. 1-2, ¶ 17 (p. 4).  Selecting federal law certainly does not waive federal law, and the law is clear that selecting the law of another state does not waive federal law either.  *See World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 521 (4th Cir. 2015) (a choice-of-law clause selecting Florida law necessarily includes federal law).

Notwithstanding the express provisions providing for federal law, Plaintiff argues that her prospective waiver challenge is based on an "implicit waiver" (i) because Plaintiff would have a RICO claim based on Texas's usury limit (but not Utah's), and (ii) because the arbitrator must apply Utah law, the Arbitration Clause allegedly operates to waive Plaintiff's claim.  Doc. 18 at 17-18.  To start, this is not waiver.  Plaintiff cites no authority that a state choice-of-law clause prohibits "her 'right to pursue' the RICO claim."  Doc. 18 at 18.  At best, her waiver challenge is simply a complaint that her RICO claim may be less likely to succeed if the arbitrator applies Utah law.  In any event, as explained below, Plaintiff offers no credible explanation for her assertion that the arbitrator "must" apply Utah law without conducting a choice-of-law analysis.

### (a)   The Magistrate Judge Correctly Concluded That Plaintiff's Prospective Waiver Challenge Is Premature.

Plaintiff cites *Mitsubishi* and several out-of-circuit tribal choice-of-law cases in support of her objection that the magistrate judge erred in enforcing the Arbitration Clause despite its purported waiver of her RICO claim.  Doc. 18 at 24.  Plaintiff misunderstands the import of *Mitsubishi* and the basis for the appellate decisions finding prospective waiver at the motion to compel stage, which turned on the certainty—not present here—that the choice-of-law provisions at issue categorically waived federal statutory rights.  In fact, these decisions support the Report's conclusion that Plaintiff's prospective waiver challenge fails as premature.

In *Mitsubishi*, the Supreme Court recognized that where a choice-of-forum and a choice-

of-law clause operate together as a prospective waiver of a party's right to pursue a federal statutory claim, the agreement to arbitrate would be against public policy. 105 S. Ct. at 3367 n.19. It then explained that it need not decide such a challenge at the motion to compel stage when it remained uncertain which law the arbitrator would apply to the plaintiff's substantive claims. *Id.* Applying this framework in *Vimar*, the Supreme Court then rejected a challenge to arbitration based on prospective waiver because "it is not established what law the arbitrators will apply to petitioner's claims or that petitioner will receive diminished protection as a result." 515 U.S. at 540. It noted that "the First Circuit was correct to reserve judgment on the choice-of-law question . . . as it must be decided in the first instance by the arbitrator." *Id.* at 541.

The Report faithfully applies this precedent. The magistrate judge rejected Plaintiff's arguments that the Utah choice-of-law clause and Arbitration Clause require the arbitrator to apply Utah law and that they bar her RICO claim. Doc. 17 at 9. Instead, the magistrate judge found that "[i]t will be for the arbitrator to determine whether choice-of-law principles require the application of Texas rather than Utah law." *Id.* As in *Mitsubishi* and *Vimar*, Plaintiff's prospective waiver challenge is "premature" because "[t]he arbiter will address the merits of Plaintiff's claims, including choice of law principles." *Id.* at 10.

None of the out-of-circuit tribal choice-of-law cases Plaintiff cites demonstrate that the Report should have instead found a prospective waiver at the motion to compel stage. One case involves a provision expressly stating that federal law does not apply and was invalidated on that basis. *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336 (4th Cir. 2017) (agreement stated "that no other state or federal law or regulation shall apply to this Agreement"). The others mandated the use of tribal law to the exclusion of federal law. *Gibbs v. Haynes Investments*, LLC, 967 F.3d 332, 342 (4th Cir. 2020) (arbitration agreement requiring the arbitrator to "apply

Tribal law and the terms of this Agreement" and mandating that the arbitrator's decision "be consistent with" Tribal Law combined to "provide that tribal law preempts the application of any contrary law," including federal law); *Gibbs v. Sequoia Cap. Operations, LLC,* 966 F.3d 286, 293 (4th Cir. 2020) (same); *Hengle v. Treppa*, 19 F.4th 324, 338-39 (4th Cir. 2021) (arbitration agreement requiring arbitrator to "apply applicable substantive Tribal law" and not to "allow for the application of any other law other" than Tribal law, required the "exclusive application of tribal law"); *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 240 (3d Cir. 2020) (arbitration agreement requiring the arbitrator to "apply Tribal Law" and issue an award "consistent with" Tribal law, as well as mandating borrower's consent to "limiting disputes to tribal law," meant borrowers were "limited to pursuing disputes under tribal law").

Plaintiff argues that this case is like *Hengle* because neither involves the "express[] waive[r] [of] federal law." Doc. 18 at 14. But there was no uncertainty in *Hengle* that the choice-of-law provision categorically waived federal rights. As the Fourth Circuit explained, "we understand the clause prohibiting application of 'any other law,' in tandem with the clauses requiring the arbitrator to apply tribal law, to *require exclusive application of tribal law in arbitration*." *Hengle*, 19 F.4th at 339 (emphasis added). Even though the arbitration clause did "not explicitly disclaim the application of federal law," "the practical effect is the same[.]" *Id.* (citation omitted). In contrast, nothing in the Arbitration Clause or the Promissory Note disavows, preempts, or replaces federal law—either expressly or by implication. There is simply a Utah choice-of-law provision and a "foreign choice of law provision, of itself, will not trigger application of the prospective waiver doctrine." *Dillon*, 856 F.3d at 334.

> **(b)** **The Magistrate Judge Correctly Concluded That the Arbitrator Will Conduct a Choice-of-Law Analysis.**

Plaintiff cannot demonstrate that her prospective waiver challenge should be decided now

because the arbitrator "must" apply Utah law.  To the contrary, the arbitrator is free to conclude

that Utah, Texas, or federal law applies to Plaintiff's substantive claims.  Nonetheless, Plaintiff

attempts to prove a false premise—that the arbitrator "must" apply Utah law—by stringing

together the Utah choice-of-law clause with three phrases taken out of context from the

Arbitration Clause: (i) that the "Arbiter must enforce your agreements with us, as they are

written," (ii) that the "[t]he Arbiter must apply substantive law consistent with the FAA," and

(iii) that "[a]ny rules that conflict with this Clause don't apply."  Doc. 1-2, ¶ 21 (pp. 5-6).   The

magistrate judge correctly explained that the arbitrator will be free to conduct a choice-of-law

analysis and thus the phrases do not mandate application of Utah law.

(i)       **The "Substantive Law" Clause Permits the Arbiter to
Conduct a Choice-of-Law Analysis.**

The requirement that the arbiter apply substantive law "consistent with the FAA" does

not require the arbitrator to blindly apply Utah substantive law.  To start, the specific directive to

"apply substantive law consistent with the FAA" is intended to assure that state arbitration rules,

such as the Texas Arbitration Act, are not construed to apply to the arbitration.  The origin of this

and similar language comes from *Volt Info. Scis., Inc. v. Bd. of Trustees of the Leland Stanford

Junior Univ.*, 489 U.S. 468, 479 (1989), which held that the FAA did not necessarily preempt

aspects of the California Arbitration Act (the "CAA") in an interstate dispute where the parties'

choice-of-law provision provided that the contract would be governed by California law.

Because the parties' contract had a choice-of-law provision selecting California law, and

although the arbitration agreement was indisputably governed by the FAA, the Court held that

certain aspects of the CAA could still apply without offending the FAA.  *Id*. at 477-79.  To avoid

this result, parties (1) exclude the arbitration agreement from their general state choice-of-law

clause, and (2) expressly state that the FAA governs the arbitration agreement and that the

14

arbitrator must apply substantive law consistent with the FAA.

Here, that is what the Promissory Note and Arbitration Clause do. They "except" the Promissory Note's Utah choice-of-law provision from governing the severable Arbitration Clause, and then mandate application of the FAA. These provisions are reinforced by the requirement that the arbitrator apply substantive law consistent with the FAA. The net effect is that state arbitration law, either Utah or Texas (or any other state), does not apply in court, when evaluating a motion to compel, or in the arbitration itself.

Critically, the need to apply substantive law consistent with the FAA does not limit the arbitrator's ability to conduct an independent choice-of-law analysis with respect to Plaintiff's substantive consumer protection claims. The FAA creates a body of substantive law relating to *arbitration*; it does not otherwise address the substantive law that applies in arbitration to Plaintiff's underlying claims, whether arising under federal or state statutory or common law.

Moreover, nothing in the FAA limits an arbitrator's ability to conduct such an analysis and courts routinely hold that under the FAA a choice-of-law analysis for a plaintiff's substantive claims is for the arbitrator. *See, e.g., Broussard v. FinWise Bank, Inc.*, SA-21-CV-01238-OLG, 2022 WL 2057488, at *4 (W.D. Tex. May 12, 2022) (rejecting argument that arbitration clause is unenforceable because a Texas plaintiff cannot arbitrate interest rate claims under Utah law where "it will be for the arbitrator to determine whether choice-of-law principles require the application of Texas rather than Utah law"); *Nguyen v. Hagerty Consulting Inc.,* No. CV 10-01595 MMM (Ex), 2010 WL 11595742, at *5, 8 (C.D. Cal. Jun. 28, 2010) (rejecting argument that an Illinois choice-of-law provision would waive a California statutory right because "the choice-of-law analysis must be conducted by the arbitrator in the first instance" and the argument improperly "presumes the arbitrator will" apply California law); *Tura v. Med.*

*Shoppe Int'l, Inc.*, No. CV 09-7018 SVW (VBKx), 2010 WL 11506428, at *1, 7 (C.D. Cal. Mar. 3, 2010) (Missouri choice-of-law clause did not prohibit California claims because "the arbitrator must decide the parties' substantive rights—including whether the choice-of-law provision impermissibly curtails Plaintiffs' substantive rights under California law").[2]  This is because under the FAA the arbitrator decides what substantive law applies.

Further, it is noteworthy that the Arbitration Clause's choice-of-law clause does not specify Utah law to govern Plaintiff's disputes in arbitration.  This silence leaves to the arbitrator the choice of applicable "substantive" law.  It certainly does not preclude the arbitrator from engaging in choice-of-law analysis.  Had the parties intended such a result, the Arbitration Clause's choice-of-law provision would have expressly selected a particular law to govern disputes in arbitration.  That the arbitrator conducts a choice-of-law analysis to determine Plaintiff's substantive claims is another dispute within the scope of the arbitration agreement that the arbitrator must resolve.  Ultimately, the arbitrator could choose either Texas or Utah or even federal law to apply to Plaintiff's claims.

### (ii) The Enforcement Provision Reflects Black Letter Law.

This conclusion is not altered by the Arbitration Clause's requirement that the "Arbiter must enforce your agreements with us, as they are written."  Plaintiff argues that this provision "forces" the arbitrator to apply the Utah choice-of-law provision—one of the parties' "agreements"—to determine the merits of her claims.  Doc. 18 at 16.  This interpretation beggars belief.  The requirement that an arbiter must apply the plain text of the Promissory Note is

---

[2] Contrary to Plaintiff's argument (Doc. 18 at 19-20), *Broussard* is on point and persuasive.  The court in *Broussard* applied settled Supreme Court precedent to a nearly identical challenge to an arbitration clause and found that choice-of-law was for the arbitrator to decide in the first instance.  *Broussard*, 2022 WL 2057488, at *4 (citing *Vimar*, 515 U.S. at 541). *Broussard*, like the case here, does not turn on the presence or absence of a delegation clause.

merely a statement of black-letter law for courts and arbitrators alike.  *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (explaining that "arbitration is a matter of contract" and that courts must "rigorously enforce" arbitration agreements according to their terms); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 (2010) ("[T]he task of an arbitrator is to interpret and enforce a contract.").  Indeed, under Texas law, "[i]f a contract is unambiguous," a court must "apply its plain meaning and enforce it as written."  *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012).  The appropriate interpretation of this provision is plain: like courts, arbitrators manage the arbitration by enforcing agreements as written.

Even with a second chance, Plaintiff offers no support for her construction of this language.  Instead, Plaintiff asserts that an arbitrator's powers are more limited than a court's and thus speculates that an arbitrator would interpret this language to prohibit an independent choice-of-law analysis.  Doc. 18 at 14-15.  But Plaintiff's citation to *Stolt-Nielsen* shows the opposite.  There, the Supreme Court held that an arbitrator could not impose its "own conception of sound policy" to create a procedure for class arbitrations without "identifying and applying a rule of decision derived from the FAA or either maritime or New York law."  *Stolt-Nielsen S.A.*, 559 U.S. at 675-77.  The Court stated that an arbitrator's role is not to create policy, but "to interpret and enforce a contract," which is exactly what the Arbitration Clause explains.[3]  *Id.* at 672.

---

[3] *Pinela v. Neiman Marcus Group, Inc.*, does not help Plaintiff.  238 Cal. App. 4th 227, 234, 243-44 (2015).  The court concluded that the delegation clause was substantively unconscionable because the arbitration agreement's specific choice-of-law clause *precluded* an arbitrator from applying California law to determine challenges to the enforceability of the arbitration agreement.  Here, the challenged choice-of-law clause does not apply to the Arbitration Clause and the magistrate judge applied Plaintiff's preferred law—Texas—to resolve her challenges to the Arbitration Clause.  Moreover, unlike in *Pinela*, the arbitrator remains free to conduct a choice-of-law analysis and may select Texas law to resolve Plaintiff's claims.

### (iii) The Conflicting Arbitration Rules "Don't Apply" Clause Does Not Mandate Utah Law.

The last phrase that Plaintiff cites—that AAA or JAMS rules that conflict with the Arbitration Clause "don't apply"—is of no help to Plaintiff either.  Plaintiff argues that this language precludes the arbitrator from looking to AAA or JAMS rules that might authorize it to avoid applying Utah law.  Doc. 18 at 17.  But as established, the Arbitration Clause contains its own choice-of-law provision, which permits the arbitrator to conduct a choice-of-law analysis and determine that Utah or Texas law applies to Plaintiff's substantive claims.  Plaintiff has not presented any argument or authority establishing that the parties may not agree that the terms of their arbitration agreement will prevail in the event of a conflict with the AAA or JAMS rules.

### (c) The Report Correctly Concluded That the Utah Choice-of-Law Clause Is Inapplicable to the Arbitration Clause.

Plaintiff also objects to the magistrate judge's conclusion that the Utah choice-of-law clause "excludes the Arbitration Clause" as (i) irrelevant and (ii) wrong.  Doc. 18 at 20-21.  Both objections are off-base.  *First*, the fact that the Utah choice-of-law does not apply to the Arbitration Clause further supports the Report's holding that the arbitrator is free to conduct a choice-of-law analysis to determine which law applies to Plaintiff's substantive claims, rather than dictating that Utah law "must" apply.  *Second*, the Report correctly concludes that the Utah choice-of-law clause excludes Utah law.  The clause provides that, "This Note is governed by federal law and the laws of the state of Utah, except that the Arbitration Clause is governed by the Federal Arbitration Act."  Doc. 1-2 ¶ 17 (p. 4).  The plain meaning is that the FAA applies to the Arbitration Clause.  And, under Section 2 of the FAA, state law applies to determine whether grounds "exist at law or in equity for the revocation" of an arbitration agreement.  9 U.S.C. §2.  Here, this means that a federal court sitting in Texas applies Texas choice-of-law rules to determine what state law applies to Plaintiff's unconscionability challenge to the Arbitration

Clause.  *See International Corrugated and Packing Supplies, Inc. v. Lear Corporation*, No. EP-15-CV-00405-DCG, 2016 WL 7410771, at *3 (W.D. Tex. Dec. 21, 2016) (applying Texas choice-of-law rules to determine what law applied to plaintiff's challenge to arbitration clause).

There is no need to conduct such an analysis here, however, because Plaintiff's challenges to the Arbitration Clause fail under both Utah and Texas law.  *See id.* (explaining that where no choice-of-law analysis is necessary the court may apply the law of the forum). Ultimately, *applying Texas law*, the Report rejects Plaintiff's arguments against enforcement of the Arbitration Clause, finding that "[t]he Note and the Arbitration Clause do not waive Plaintiff's statutory claims under federal or Texas law."  Doc. 17 at 9-10.  There is nothing improper about the Report's analysis, which faithfully applies applicable law.

Plaintiff's preferred interpretation of the Utah choice-of-law clause—that "Utah substantive law still applies to the arbitration clause" but Utah arbitration law does not (Doc. 18 at 21)—cannot be squared with the clause's plain language expressly excluding the Arbitration Clause from the selection of Utah law.  Plaintiff claims her interpretation makes sense because it avoids having state arbitration procedure apply to the Arbitration Clause.  Doc. 18 at 22-25.  As explained above, however, the Arbitration Clause achieved this by *excepting* application of Utah law and mandating application of the FAA.  *See supra* § IV.B.2(c).  Interpreting the clause to require the application of Utah substantive law to the Arbitration Clause does nothing to preclude the application of state arbitration law.  Plaintiff's strained interpretation of the Utah choice-of-law clause does not reveal any error in the magistrate judge's interpretation of the clause.[4]

_____

[4] Contrary to Plaintiff's claims (Doc. 18 at 22), courts regularly interpret similar clauses to allow a different state's law to apply to the arbitration clause than the remainder of the agreement.  *See, e.g.*, *Silicon Valley Self Direct, LLC v. Paychex, Inc.*, No. 5:15-CV-01055-EJD, 2015 WL 4452373, at *3 (N.D. Cal. July 20, 2015) (applying California law to formation and (footnote continued)

### C.      Plaintiff's New "Prospective Waiver" Challenge Fails.

Based on her claim that Utah law applies to the Arbitration Clause, Plaintiff raises the new argument that this "is an invalid prospective waiver of [Plaintiff's] right to challenge the clause under Texas law." Doc. 18 at 22. This "objection" to the Report fails for several reasons.

*First*, Plaintiff did not raise this argument in opposition to OppFi's Motion to Compel. *See Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) (party waives an argument made for the first time in objections to magistrate judge's report and recommendation). Accordingly, the Court may not consider it in deciding whether to adopt the Report.

*Second*, Plaintiff's challenge is puzzling because the magistrate judge in fact analyzed Plaintiff's state-law challenges to enforceability under Texas law. Doc. 17 at 9-10. Thus, there is no "waiver" of any purported right to challenge the Arbitration Clause under Texas law here.

*Third*, Plaintiff cites no authority that a prospective waiver challenge arises where a plaintiff cannot assert challenges to an arbitration clause under a specific state's law. *Hengle* and *Williams* were concerned that the selection of tribal law to the exclusion of federal *and* state law required an arbitrator to determine the enforceability of an arbitration agreement without recourse to federal or state law. *Hengle*, 19 F.4th at 339; *Williams*, 965 F.3d at 244. These cases do not say anything about whether the prospective waiver doctrine applies if a party is precluded from challenging an arbitration clause under a particular state's law. In any event, Plaintiff was not precluded from raising her Texas challenges here.

*Fourth*, even if the arbitrator had applied Utah law to the exclusion of Texas law,

---

enforceability challenges to arbitration clause where agreement provided that it is governed by New York law, but arbitration clause is covered by the FAA); *Coffey v. Kellogg Brown & Root*, No. 1:08-CV-2911-JOF, 2009 WL 2515649, at *6 (N.D. Ga. Aug. 13, 2009) (where agreement provided that it is governed by Texas law, but issues about arbitration provision are governed by the FAA, court applied Georgia law to the enforceability challenge to arbitration).

Plaintiff does not explain how this would result in a waiver of any challenge to arbitration. Plaintiff's unconscionability and public policy challenges to the enforceability of the Arbitration Clause have the same outcome under Texas and Utah law—they fail.  *See* Doc. 12 at 8 n.1.

**D.     Plaintiff Fails to Identify Any Error in the Court's Determination That the Arbitration Clause Is Enforceable Under Texas Law.**

Plaintiff argues the Report failed to consider her argument under Texas law that the Arbitration Clause is both substantively unconscionable and void under public policy because the enforcement clause "gives the arbiter no choice but to declare the loans valid."  Doc. 18 at 23. Plaintiff is wrong.  The Report specifically found that "this argument lacks foundation" because neither the Promissory Note nor the Arbitration Clause waives her right to challenge her loan agreement under federal or Texas law.  Doc. 17 at 10.  In other words, the Report rejected Plaintiff's view that the enforcement clause bars the arbitrator from considering her defenses to enforcement of the Promissory Note.  *See supra* § IV.B.2(c); Docs. 12 at 15-16, 16 at 9-10.

**E.     Plaintiff's Claim That Severance Is Improper Is Not an Objection.**

The Report did not reach the question of whether any of the provisions Plaintiff challenges should be severed because it found nothing objectionable about the Arbitration Clause.  Plaintiff's claim that any offending provision cannot be severed is therefore not an "objection" to the Report.  *See* Doc. 18 at 24.  Plaintiff is also wrong about the propriety of severance.  *See* Docs. 12 at 14-15, 16 at 10-11.  If there were any unconscionable provisions (and there are not), it would be appropriate to sever such provisions.

Under Texas law, "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement."  *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 230 (Tex. 2014) (citation omitted).  The essential purpose of an agreement turns on "whether or not parties would have entered into the agreement

absent the unenforceable provisions." *Id.* (citation omitted).  The essential purpose of the Arbitration Clause is to settle any disputes arising out of Plaintiff's loan in arbitration. Eliminating the Utah choice-of law clause—which is not even part of the Arbitration Clause— would in no way impair this purpose.  The arbitrator would simply apply straightforward choice-of-law principles to determine applicable state law, as the magistrate judge concluded the arbitrator must do even if that clause stands.  Nor would eliminating the enforcement clause impair the purpose of the Arbitration Clause—it merely reflects a basic legal principle.

Courts readily sever non-essential provisions while enforcing the rest of the contract, where, as here, the contract contains a severability clause.  Doc. 1-2, ¶ 17 (p. 4) (severability clause); *Dreibrodt v. McClinton Energy Group, LLC*, 16–CV–00340–RAJ, 2017 WL 7805761, *4-5 (W.D. Tex. Jan. 3, 2017) (severing unenforceable fee-splitting clause from arbitration agreement and enforcing the remainder); *Parrott v. D.C.G., Inc.*, No. 3:19-CV-1718-N, 2020 WL 1876096, at *4 (N.D. Tex. Apr. 14, 2020) (severing provision from arbitration agreement because it did not impact the key objective of an arbitration agreement—to avoid litigation).

Plaintiff points to the tribal lending cases to argue that severance is inappropriate.  Doc. 18 at 24.  However, the arbitration agreements in the tribal lending cases are wholly distinguishable.  Those cases involved arbitration agreements that contained within themselves tribal choice-of-law provisions that displaced federal law and mandated application of "Tribal Law," even if the consumer opted-out of arbitration.  Here, there is no scheme to avoid federal law, there is no express or implicit waiver of federal law, and the Plaintiff was free to opt out.

## V.   **CONCLUSION**

For all of the foregoing reasons, the Court should overrule Plaintiff's objections, and adopt, Judge Hightower's Report.

DATED:  November 21, 2022    Respectfully submitted,

/s/ Fredrick S. Levin     _
Fredrick S. Levin (*Pro Hac Vice*)
BUCKLEY LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel: (310) 424-3900
Fax: (310) 424-3960
flevin@buckleyfirm.com

Ali M. Abugheida (*Pro Hac Vice*)
BUCKLEY LLP
150 Spear Street, Suite 800
San Francisco, California 94105
Tel: (415) 619-3500
Fax: (415) 619-3505
aabugheida@buckleyfirm.com

Douglas D. Dodds (SBN 05932020)
April E. Lucas (SBN 24046323)
McGinnis Lochridge LLP
1111 West 6th Street
Bldg. B, Ste 400
Austin, Texas 78703
Tel:  (512) 495-6000
Fax:  (512) 495-6093
Email:  ddodds@mcginnislaw.com
   alucas@mcginnislaw.com

*Attorneys for Opportunity Financial, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2022, I have served the forgoing

document via the CM/ECF system which will send notification of such filing to the following:

Dan Terzian
Warren Terzian LLP
222 N Pacific Coast Highway, Suite 2000
Los Angeles, California 90245
Tel:  (213) 410-2620
Email:  Dan.Terzian@warrenterzian.com

John R. Davis
Slack Davis Sanger, LLP
6001 Bold Ruler Way, Suite 100
Austin, Texas 78746
Tel:  (512) 794-8686
Fax:  (512) 795-8787
Email:  JDavis@slackdavis.com

/s/ Fredrick S. Levin
Fredrick S. Levin (Pro Hac Vice)
Fredrick S. Levin (*Pro Hac Vice*)
BUCKLEY LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel: (310) 424-3900
Fax: (310) 424-3960
flevin@buckleyfirm.com